[Civ. No. 12231. Third Dist. July 22, 1970.]

RICHARD PERLMAN, Plaintiff and Respondent, v.
SHASTA JOINT JUNIOR COLLEGE DISTRICT
BOARD OF TRUSTEES et al., Defendants and Appellants.

874

## COUNSEL

Leep & Saunders, John D. Barr, Paul N. Halvonik and Charles C. Marson for Plaintiff and Respondent.

Robert A. Rehberg, County Counsel, for Defendants and Appellants.

## OPINION

**BRAY, J.**[†]—Appellants Shasta Joint Junior College District Board of Trustees, Gilbert Collyer, Loren D. Phillips and William Meardy appeal from a superior court judgment ordering appellants to set aside the expulsion of respondent Richard Perlman from Shasta Joint Junior College and to strike from his school record all reference to the expulsion and to a prior suspension.[1,2]

---

[†]Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]A brief was submitted on behalf of the American Civil Liberties Union of Northern California as amicus curiae in support of Perlman's position.

[2]For convenience of expression appellants will be referred to hereinafter as "College Board" and respondent as "Perlman." The proceedings of January 23 will be referred to as the "suspension hearing" and those of February 21 as the "expulsion hearing."

QUESTIONS PRESENTED

1. The validity of the proceeding of January 23, 1968, suspending Perlman and providing probation.

2. The validity of the proceedings of February 21, 1968, expelling Perlman.

RECORD

On February 23, 1968, Perlman filed in the Shasta County Superior Court a petition for writ of mandate to review the College Board's proceedings at the suspension and expulsion hearings hereinafter discussed and to vacate Perlman's expulsion from Shasta College. A temporary restraining order was issued staying the operation of the expulsion order pending the hearing of the petition. After a hearing the court found that the proceedings at both the suspension and expulsion hearings were not conducted as required by law, that Perlman was not given adequate notice of either hearing and that findings of fact were required at both hearings but were not made, that Perlman was not afforded a fair hearing at either proceeding, that the College Board was biased and prejudiced and prior to the expulsion hearing had reached a decision on the merits. The court then ordered that the orders of suspension and expulsion be set aside, that the College Board strike from Perlman's student record any refernces to the suspension and expulsion, and that, if necessary, further proceedings be had in conformity with the court's order.

### The Suspension Proceeding

Perlman was a student in good standing at Shasta College. William Meardy was the dean of students. Perlman apparently had some position on the student body association having to do with exhibiting moving pictures and selling tickets therefor. Perlman told the dean that he was planning to invite a group of socialists to the campus and was informed by the dean that he was required by the College Board's procedures and policies handbook before doing so to go to the dean's office and fill out some forms. Perlman obtained a copy of the book and informed the dean that he was right about the requirement but that he might or might not follow the requirements. Apparently Perlman had the consent of the president and vice president of the college to invite the other students. The college regulations required that the approval of the superintendent or vice president be obtained for nonstudents coming to the campus for "advertising." They did not require the approval of the dean. Apparently Perlman had given the president the impression that he had received the dean's consent. Later Perlman came to the dean and told him the "socialists" had arrived. It would appear that

they were distributing some kind of literature on the campus. The dean then informed Perlman that as he had not gone through proper channels Perlman should invite the students to leave and Perlman then to proceed "through channels." Perlman refused. Thereupon the dean notified Perlman that having violated his instructions he should appear one hour later at the president's office. It seems that the handbook made it an offense to violate the instructions of a credentialed person.

At the appointed hour Perlman met with the college president, the vice president, the dean of men and Dean Meardy. The latter informed the group of Perlman's failure to get his permission to invite the students. Perlman did not deny Meardy's version of their encounters. Whether Perlman attempted any defense does not appear. Apparently he did not ask for a further hearing nor offer to produce witnesses.

Thereupon Perlman was suspended from the college for three days. However, he was allowed to take an examination which fell during that time. He was also placed on disciplinary probation to commence at the beginning of the new term, February 13, and to continue until the end of the semester. This meant that he was not to participate in any college activities, attend any functions or hold any office but could go to classes and take examinations.

Shortly thereafter a letter was sent Perlman telling of his conviction of violating the dean's instructions and the penalty decided therefor. Later the terms of probation were modified as being too restrictive. Under the modification he was allowed to continue to attend functions but could not maintain his position as ticket taker or ticket seller and movie chairman.

The dean stated that he read to Perlman from his notes the specific terms of the probation and emphasized that he was removed from handling money or holding any important position within the student body.

On February 7 Perlman told the dean that without authorization he had taken books from the lost and found room, sold them for $32 and kept the money. The dean then told him to come to the president's office for another meeting. Perlman refused to come "on advice of counsel" because his counsel was not available. Perlman was given a written memorandum of the terms, dated February 15. He violated the terms the same night by showing the movie and collecting some $16.50. The dean told him he was violating the probation terms.

On February 15 a letter from the dean to Perlman was given him, headed "SUBJECT: Recommendation to the Board Regarding Suspension or Expulsion." This advised him that a special meeting of the College Board would

be held February 21 "for the purpose of considering a recommendation to suspend or expel you from college.

"The charges are as follows:

"On Wednesday February 14, 1968 you did knowingly willfully and purposely violate the provisions of the strict disciplinary *probation* status upon which you were placed as per our letter to you dated February 14, 1968 (copy enclosed). You accomplished this by maintaining your position as movie committee chairman and chairman of the ticket sellers and ticket takers committee." The letter then stated that this violation occurred on the night of February 14 and pointed out that the strict disciplinary probation letter specifically prevents Perlman from holding " 'any other responsible club or organization positions,' " and that he was forbidden from holding any job sponsored by the college or student body " 'which includes the taking or handling in any way of college or student body money.' " That on the night of February 14 Perlman supervised, collected and deposited with the college business office $16.50 in ticket sales money. Also " 'you are charged with continued willful disobedience, open and persistent defiance of the authority of the school personnel and continued abuse of school personnel, as evidenced by your conduct including, but not limited to, the following:' " refusal to come to a 2 p.m. meeting on February 13 in the president's office after Meardy had expressly directed him to come; Perlman's admission of having taken books from the college lost and found room and selling them for approximately $32.

The letter then stated that Perlman had the right to be represented by counsel at the board meeting, could request that the meeting be open to the public and could bring witnesses to testify in his behalf.

### The Suspension Order

The contention that the proceedings of January 23 violated the elementary principles of due process of law is based upon the claim, as found by the court, that notice of the hearing must be given in writing, setting forth the charges against Perlman and advising him of a right to counsel and to call witnesses in his own behalf, and secondly, that written findings of fact should have been made by the disciplinary body. This contention raises the question of whether for a minor infraction of college requirements, such as refusal of a student to follow the instructions of a credentialed person, a formal written notice setting forth charges must be given him before he may be disciplined for such an infraction. It must be remembered that the only charge against Perlman before the disciplinary group was that he refused to follow Dean Meardy's instruction to apply to

him for permission to invite the socialist students, the rules of the college providing that such refusal is an offense. ■ Primarily the authorities hold that in any college disciplinary proceeding the student is entitled to a "fair hearing." As will hereinafter appear, such proceedings are not required to provide the type of due process required in criminal court proceedings. (*Goldberg* v. *University of California* (1967) 248 Cal.App.2d 867, 881 [57 Cal.Rptr. 463].)

All parties cite *Dixon* v. *Alabama State Board of Education* (5th Cir. 1961) 294 F.2d 150, cert. denied 368 U.S. 930 [7 L.Ed.2d 193, 82 S.Ct. 368], as a leading case on the subject of procedural due process in college disciplinary proceedings. It deals primarily with expulsion of students not suspension or probation. For expulsion it requires compliance with: (1) a notice containing a statement of the specific charges and grounds which would justify expulsion, the names of the witnesses against the student and a statement of the gist of their proposed testimony; (2) a hearing whose scope and nature should vary according to the circumstances of the particular case. This hearing need not be a full-dress judicial hearing, but one giving the student a full opportunity, with witnesses, if any, to present his defense. In other words, a fair hearing. (3) If the hearing is not before the board directly, findings of the board should be given the student. We find nothing in *Dixon* requiring quite so much formality in disciplinary proceedings for minor infractions of college rules which do not require board hearing and which may be dealt with, as here, by the president of the college. Neither *Dixon* nor *Goldberg* require such formality in the latter type proceeding. A reasonable rule would be that all that is required is that the student be given a fair notice and a fair hearing, the type of notice to depend upon the circumstances of the offense.

■ In the case at bench where the dean discussed with the student his refusal to comply with the dean's instructions and told the student to report at the president's office an hour later, it would be absurd to require that the dean write a formal notice to the student to appear and to set forth what the student already knew was his claimed offense. Likewise, in a situation as here it would be almost ridiculous to hold that at the hearing the student would have to be informed that he had the right to call witnesses when there were no witnesses other than the dean and the student. No unfairness is shown in the conduct of the hearing. The student did not assert that the notice of the hearing was too short, that he wanted the hearing continued or that he wanted a lawyer. As said in *Madera* v. *Board of Education of City of New York* (2d Cir. 1967) 386 F.2d 778, 786, "The right to representation by counsel is not an essential ingredient to a fair hearing in all types of proceedings."

In *Barker* v. *Hardway* (S.D. W.Va. 1968) 283 F.Supp. 228, 237, the court stated that it knew of no authority "extending the right of counsel to a student at a school disciplinary hearing. . . ." No such requirement appears in *Dixon* or *Goldberg,* although in the latter case the board permitted the student to be represented by counsel.

In *Wright* v. *Texas Southern University* (5th Cir. 1968) 392 F.2d 728, the student was asked to report to the dean's office where his conduct during the spring semester was discussed with the dean, who then referred the student to the university president who discussed with him the university's complaints against him. After this the dean and the president decided to deny the student readmission to the college. The court pointed out that, as in the instant case, the student at the court hearing produced no evidence to indicate that the hearing before the president was inadequate. The court then held that as the student had been given a fair opportunity to explain his conduct he had been given a fair hearing and that no violation of due process was involved.

In *Due* v. *Florida A. and M. University* (N.D. Fla. 1963) 233 F.Supp. 396, the plaintiffs were indefinitely suspended after appearing before a hearing board where they were first notified of the charges against them. It was held that there was no violation of due process.

The reason seems to be that except for expulsion proceedings (expulsion means that the student may never again attend the college) the rule appears to be that each disciplinary proceeding is *sui generis,* and if under all the circumstances the student was given a fair hearing and opportunity to meet any charges brought against him, the courts will not interfere.

As said in *Hannah* v. *Larche* (1960) 363 U.S. 420, 422 [4 L.Ed.2d 1307, 1310, 80 S.Ct. 1502], the differing rules of fair play encompassed by the concept of due process vary according to specific factual contexts and different types of proceedings. It could very well be that where charges of infractions of college rules are more than one or require the presence of witnesses a more formal notice and proceeding would be required than was the situation here where only one infraction was charged and that was discussed between the student and the dean so that the student knew why he was instructed to appear at the president's office and that it was a matter in which no one, other than himself and the dean, was involved, common sense discloses that no other procedure than that taken was required. We cannot find so far as the suspension hearing is concerned that Perlman was denied what *Dixon* states are necessarily the "rudiments of an adversary proceeding" (p. 159) or of fair play.

So far as findings are concerned, if the oral statement by the president at

the end of the hearing was not a sufficient finding, the letter sent to Perlman immediately thereafter, stating why he was being disciplined and the penalty, met any possible requirement of due process.

In *Esteban* v. *Central Missouri State College* (W.D. Mo. 1968) 290 F.Supp. 622, at page 629, the court stated: "By judicial mandate to impose upon the academic community in student discipline the intricate, time consuming, sophisticated procedures, rules and safeguards of criminal law would frustrate the teaching process and render the institutional control impotent. This Court will not make such imposition."

Amicus curiae intimate that because Perlman was engaging in what might be considered First Amendment rights in inviting the socialist students to the campus, possibly the dean's requirement that permission first be obtained from him could not be required. It must be remembered that this requirement was merely a matter of procedure and was not a denial of any right of Perlman to invite the students. In fact, the dean testified that he told Perlman, when Perlman said that he was planning to invite a group of socialists to the campus, "That's fine, would you go through my office first and fill out the proper forms?" Amicus curiae have pointed to no authority, and we have been unable to find any, holding that the First Amendment denies the right of the college to reasonable regulations in this respect. *Brooks* v. *Auburn University* (M.D. Ala. 1969) 296 F.Supp. 188, and other authorities which hold, in effect, that an educational institution may not unduly interfere with the right of students to invite to the campus and to hear speakers of their choice do not hold that reasonable regulations as to the manner of inviting such speakers may not be made by the institution. It would be a different situation had the dean or any other official of the college denied Perlman the right to invite the students and Perlman was being disciplined for failure to comply with such denial.

Perlman received a three-day suspension which did not deny him the right to take examinations during that period and probation to commence and to continue during the next term. At the beginning of the new semester the conditions of the probation were modified without request, as it was considered the conditions were too severe. So far as the suspension hearing is concerned, the trial court's finding that there was a lack of procedural due process in that the notice of the hearing and the type of findings of fact were inadequate is erroneous. Nor is there any evidence of unfairness at the hearing. That portion of the judgment which sets aside the order of suspension of January 23, 1968, and which orders any reference to that order to be stricken from Perlman's student record must be reversed.

### The Expulsion Order

This order, as hereinbefore stated, is based upon a notice to Perlman charging him with violating the probation order of January 23, as modified, and with other violations. Perlman attacks this order upon a number of grounds, including, as found by the court, that Perlman was deprived of a fair hearing in that the board was biased and prejudiced against Perlman. Inasmuch as there is substantial evidence in the record to support this finding and such finding is sufficient to require affirmance of the trial court's judgment setting aside the expulsion order, it is unnecessary to consider the other points raised by Perlman.

"The power of an appellate court begins and ends with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, that will support the finding." (*Mashon* v. *Haddock* (1961) 190 Cal.App.2d 151, 165 [11 Cal.Rptr. 861].)

" 'In reviewing the evidence . . . all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. . . . When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.' " (*Mason* v. *Lyl Productions* (1968) 69 Cal.2d 79, 85 [69 Cal.Rptr. 769, 443 P.2d 193], quoting *Yakov* v. *Board of Medical Examiners,* 68 Cal.2d 67, 72 [64 Cal.Rptr. 785, 435 P.2d 553].)

Applying these rules to the record in the instant case there is ample evidence to support the court's finding.

On February 20, the day prior to the expulsion hearings, Rolland Robinson, a member of the board, was sent a letter by the manager of the local chamber of commerce reading, in pertinent part, as follows: "Mr. Ray Neutze attended the meeting of the Directors of the Anderson Chamber of Commerce yesterday noon (2-19-68) and presented a case regarding disciplinary action of a student at Shasta College.

"It was the unanimous opinion that the case does not come under the provisions on which this Board of Directors may act. It was stated that the College officials have all the authority required to procees [*sic*] a case of the sort referred to."

Although Ray Neutze denied that he asked for support of the chamber of commerce for petitioner's expulsion, one Jess Cannan, a former District Attorney of Trinity County, who was president of the Anderson Chamber of Commerce, testified that prior to the expulsion hearing Neutze appeared before the chamber and stated that he had talked to Robinson who told

Neutze that the board had decided to dump petitioner. Cannan further testified Neutze recounted that the board wanted support in their action and was requesting a resolution from the Anderson Chamber of Commerce.

Warner Ahrbeck, a lawyer in Anderson, testified that Robinson called him and told him the Saturday before the hearing that the College Board in telephone discussions had unanimously decided to expel petitioner; that they were holding a hearing for that purpose; and that they wanted backing of responsible citizens. The following day, and in five telephone conversations, Ahrbeck and Robinson discussed the situation. Robinson indicated to Ahrbeck on a number of occasions that petitioner would be expelled and that the board had unanimously decided this through numerous telephone conversations.

At the end of the expulsion hearing Perlman's counsel requested a continuance of the hearing. The chairman inquired as to the wish of the board in this respect. Thereupon board member Toler stated "since the matter of the bottom of the memo dated February 15 [the notice sent Perlman of the charges against him] was not considered in making this decision, and only the other points of disciplinary action, I move that the hearing proceed." The board then proceeded without further consideration of the charges against the student to expel Perlman. Concerning this statement of Toler, the judge in his memorandum decision stated, "This certainly indicates that this board had reached a decision before its formal announcement of it, or even before the hearing had actually concluded. Counsel for respondents argues that this comment referred to the decision to set the matter for hearing in the first place not to a final decision of the board. The court draws no such inference. The inference drawn by the court from this statement, coupled with the testimony summarized above, is that the board in fact made its decision prior to the hearing and, hence, was not an impartial board." We draw the same inference.

Although Robinson and another member of the board testified that no decision had been made by its members prior to the meeting of the board, the evidence above set forth was sufficient basis upon which the trial court could determine both that the board was biased and that it had prejudiced Perlman's case.

■   Due process does not forbid the combination of judging and prosecuting in administrative proceedings. However, it is necessary to closely review the proceedings in order to protect the fundamental rights of parties. (See 2 Davis, Administrative Law Treatise (1958) § 13.02, p. 175 et seq.) And if the record of such proceedings shows bias and prejudice upon the part of the administrative body, its decision will not be upheld by the courts. (See *Rudolph* v. *Athletic Com.* (1960) 177 Cal.App.2d 1,

14 [1 Cal.Rptr. 898]; *Jones* v. *State Board of Education of and for State of Tenn.* (M.D. Tenn. 1968) 279 F.Supp. 190, 200.)

That portion of the judgment which sets aside the order of suspension of January 23, 1968, and which orders any reference to that order be stricken from Perlman's student record is reversed. In all other respects the judgment is affirmed. Petitioner-respondent Richard Perlman will recover costs.

Pierce, P. J., and Regan, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 24, 1970.