[Civ. No. 29984. First Dist., Div. Four. Jan. 10, 1972.]

PETER JOHN ANDERSEN, JR., Plaintiff and Appellant, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,
Defendant and Respondent.

764

766

**COUNSEL**

William E. Jageman and Ephraim Margolin for Plaintiff and Appellant.

Thomas J. Cunningham and Donald L. Reidhaar for Defendant and Respondent.

**OPINION**

**BRAY, J.**\*—Plaintiff appeals from an amended judgment in favor of defendants.

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

## Questions Presented

1. Does enrollment in the university constitute a contract?

2. Was plaintiff denied procedural due process?

## Record

Plaintiff filed a complaint in the Alameda County Superior Court against defendants, alleging, in effect, that by accepting him as an undergraduate student at the Berkeley campus of the University of California, a contract was created to keep him enrolled until graduation, and that defendants breached that contract by wrongfully and arbitrarily dismissing plaintiff from the university without probable cause because the hearings on which said dismissal were based did not afford plaintiff due process of law in that, among other things: (1) he was not notified in writing prior to said hearings of the acts he allegedly committed nor the nature of the alleged violations, (2) said hearings were not public, (3) plaintiff was not advised, prior to said hearings, of his right to counsel and his right not to testify or give information against himself, (4) no proper record was kept of said hearings, (5) plaintiff was not advised what witnesses would give evidence against him, (6) the fact finders relied on evidence not available to plaintiff, (7) plaintiff was not given an opportunity to prepare his defense or confront or cross-examine those who were accusing him and giving evidence against him; the persons accusing plaintiff of the acts alleged submitted their testimony in written form not made available to plaintiff, (8) plaintiff was excluded from the hearings at times when testimony was given by others, (9) plaintiff was not told he was charged with anything, just that his cooperation was needed to find out who was responsible for the alleged acts, (10) the hearing committee was biased and not impartial, and, (11) while defendants were represented by legal counsel, plaintiff had no counsel and no effort was made by defendants to provide counsel for plaintiff.

Defendants' motion to strike allegations 2, 3, 5, 6, 8 and 11 was granted on the ground of irrelevancy. A pretrial conference order was rendered, stating the issues to be (1) whether defendants breached their contract with plaintiff, (2) whether the university proceedings, resulting in plaintiff's dismissal for misconduct, met the requirements of due process of law, and (3) what, if any, damages were suffered by plaintiff. After trial without a jury, a jury having been expressly waived, the court made its findings of fact and conclusions of law.

From the findings, the court concluded that (1) assuming that a contract existed between plaintiff and defendants, defendants did not breach

the contract by dismissing plaintiff from the university; (2) proceedings resulting in plaintiff's dismissal were conducted in accordance with the requirements of due process of law; and (3) the findings of the university's committee on student conduct were based upon substantial evidence. Judgment was entered accordingly.

*Facts*

Plaintiff was enrolled as a third year student for the fall semester 1964-1965 at Berkeley and had paid the required fees. He was dismissed from the university at the end of that semester. This matter was initiated by a call to the office of Dean Van Houten, associate dean of students, from Professor Horace Y. Mochizuki, instructor of Math 111, in which plaintiff was enrolled, informing him of alleged misconduct of plaintiff. This misconduct Professor Mochizuki subsequently set forth in a letter to the dean. It stated that in a second examination in the course (plaintiff did not take the first examination) plaintiff received an 85 and that in the third examination plaintiff received a 9. Plaintiff took the final examination but did not hand in his examination paper. The professor said he had a sure witness and a possible other witness who had seen him count the papers. Finding them one short, he concluded that plaintiff had given up. Later the professor discovered that plaintiff's grade of 9 had been erased and a grade of 81 substituted. Also there was a grade of 71 for the first examination which the professor was "almost sure" plaintiff had not taken. Missing from the professor's desk drawer was plaintiff's last examination paper which also held the grade sheet. Also missing was the professor's grade report for the course, which was later found in an engineering study room. On the original grade report the "F" had been erased and replaced with an "A."

Plaintiff was contacted and went to Dean Van Houten's office where the dean said he wanted to ask him questions about Math 111. Plaintiff said that he had dropped the class.

An investigation followed in which it was learned that there were petitions in plaintiff's folder for withdrawal from Math 111 and Electrical Engineering 104 on which the professor's forged signature approved his dropping those courses. While the professor had delegated certain individuals to sign his name, attaching their initials, none of those authorized had done so. The dean of the college of engineering stated that these petitions were not in plaintiff's folder two days earlier when the dean and Professor Mochizuki had looked through it.

Dean Van Houten talked to plaintiff some three to five times concern-

ing what was uncovered in the investigation. He found plaintiff cooperative and quite frank. Although Professor Mochizuki's letter was not shown plaintiff, its contents were discussed by the dean with plaintiff, as well as everything which the dean put in his report to the faculty committee on student conduct. Among other matters, plaintiff was informed that he was accused of cheating in Math 111.

At the first hearing by the committee there were three members present. The hearing was not public; no written notice of the charges against plaintiff was given him prior to the meeting. That morning he was given a copy of the three-page memorandum prepared by Dean Van Houten containing the charges. The report and material gathered by the dean were read by the committee. The only question asked of the dean was whether there was a denial of the charges. Plaintiff was not in the meeting room at this time.

Plaintiff was informed by the chairman that he should have counsel, that this was a serious and unusual case, that there was strong circumstantial evidence against him, and that counsel need not be a member of the Bar but could be a teacher, a parent or a friend. Plaintiff indicated that he could not afford private counsel. He was not informed that counsel could be furnished him nor that he could remain silent. A secretary who could take shorthand was present and kept minutes of the proceedings.

The course reports and other documents were present, available for plaintiff's examination. The meeting continued for about an hour and was adjourned.

At the second meeting, the dean of engineering and Professor Mochizuki were present and discussed the matter with the committee and were questioned by plaintiff.

1. Does enrollment in the university constitute a contract?

■ That, by reason of plaintiff's enrollment as a student, there arose a contract between him and the university may not be questioned. Defendants conceded in the pretrial conference that there was a contract with the university. As stated the pretrial conference order set forth that the first issue to be tried was whether defendants breached that contract. It is difficult to understand why, in view of that concession, defendants now contend that no such contract existed. While constitutional principles of due process apply to disciplinary action taken by the university, this in itself does not mean that enrollment in the university does not create a contract between student and university. "[B]y the act of matriculation, together with payment of required fees, a contract between the student and the institution is created containing two implied conditions: (1) that the stu-

dent will not be arbitrarily expelled, and (2) that the student will submit himself to reasonable rules and regulations for the breach of which, in a proper case, he may be expelled, . . ." (49 Cal.Jur.2d, Universities and Colleges, § 58, at p. 505.) A contract is created with the state which, by its very nature, incorporates constitutional principles of due process. Attendance at a publicly financed institution of higher education is to be regarded as a benefit somewhat analogous to that of public employment. (*Goldberg* v. *Regents of the University of California* (1967) 248 Cal.App. 2d 867, 877 [57 Cal.Rptr. 463].)

■ The function of the university is to impart learning and advance the boundaries of knowledge. This carries with it the administrative responsibility to control and regulate conduct and behavior of the students which tend to impede, obstruct, or threaten the achievements of its educational goals. (*Goldberg* v. *Regents of the University of California, supra,* 248 Cal.App.2d 867, 879.)

2. Was plaintiff denied procedural due process?

■ In determining whether plaintiff was granted procedural due process a number of applicable principles should be borne in mind, particularly as most of plaintiff's contentions refer to rights of persons being tried for crimes and are not such rights as apply in an administrative hearing. As said in *Esteban* v. *Central Missouri State College* (W.D.Mo. 1968) 290 F.Supp. 622, "By judicial mandate to impose upon the academic community in student discipline the intricate, time consuming, sophisticated procedures, rules and safeguards of criminal law would frustrate the teaching process and render the institutional control impotent." (290 F.Supp. at p. 629.) As said in *Goldberg* v. *Regents of the University of California, supra,* 248 Cal.App.2d 867, at page 881, "procedures for dismissing college students [are] not analogous to criminal proceedings and could not be so without at the same time being both impractical and detrimental to the educational atmosphere and functions of a university." In *Perlman* v. *Shasta Joint Jr. College Dist. Bd. of Trustees* (1970) 9 Cal.App. 3d 873 [88 Cal.Rptr. 563], at page 880, the court stated "that except for expulsion proceedings (expulsion means that the student may never again attend the college) the rule appears to be that each disciplinary proceeding is *sui generis,* and if under all the circumstances the student was given a fair hearing and opportunity to meet any charges brought against him, the court will not interfere."[1]

---

[1]Plaintiff was not expelled from the university. He was dismissed and not permitted to petition for readmission for a year.

"Primarily the authorities hold that in any college disciplinary proceeding the student is entitled to a 'fair hearing.' " (*Perlman* v. *Shasta Joint Jr. College Dist. Bd. of Trustees, supra,* 9 Cal.App.3d 873, 879; to the same effect, *Goldberg* v. *Regents of the University of California, supra,* 248 Cal.App.2d 867, 881; *Dixon* v. *Alabama State Board of Education* (5th Cir. 1961) 294 F.2d 150; cert. den. 368 U.S. 930 [7 L.Ed.2d 193, 82 S.Ct. 368].)

As said in *Dixon, supra,* the student is entitled to (1) a notice containing a statement of the specific charges against him, the names of the witnesses and a statement of the gist of their proposed testimony, and (2) a hearing the scope and nature of which should vary according to the circumstances of the particular case. The hearing need not be a full dress judicial hearing but one giving the student a full opportunity to present his defenses.

With these rules in mind, we turn to plaintiff's contentions which he claims show that he did not receive a fair hearing.

*(1) Notice.*

 It is true that prior to the hearing plaintiff was not given any written notice. However, under the peculiar circumstances of this case, this fact did not deprive plaintiff of due process. Dean Van Houten discussed with plaintiff some three to five times the charges set forth in Professor Mochizuki's letter, even though he did not show the letter to plaintiff. He also discussed with him the matters he had learned by investigation and the contents of the report he was making to the disciplinary committee. Although plaintiff denies that he knew that he was being accused of the changes in the records, etc., until the second hearing of the committee, the testimony of Dean Van Houten and the committee chairman, Professor Degnan, and plaintiff's letter of February 15, 1965 in which plaintiff stated "it was not until three days later, on Monday, January 25, 1965 that he [Dean Van Houten] informed me for the first time of being accused of cheating in Math 111," refute plaintiff.

Then, too, plaintiff was given a copy of the dean's report at the beginning of the disciplinary hearing. This contained the charges against him and the names of the people who had been contacted in the investigation. Plaintiff read it. Professor Degnan told him that this was an unusual and rather serious case and was one in which he should be represented by counsel, explaining that the counsel need not be a member of the Bar but could be a teacher, a parent or a friend.

At this first hearing plaintiff did not ask for time to meet the charges. Moreover, the hearing was continued for some seven days during which

time plaintiff contacted the chairman, asking him if he thought plaintiff was guilty, at which time the chairman told him that there was a strong circumstantial case and that plaintiff needed the assistance of counsel. At the beginning of the second hearing plaintiff was given a copy of the second report made by Dean Van Houten containing the results of the additional investigation the latter had made between hearings. Thus plaintiff had ample notice of the charges against him and opportunity to obtain witnesses, if there were any, and was in no wise injured by the fact that no written notice was given him prior to the hearing.

### (2) *Hearings not public.*

Plaintiff has cited no authority and we have found none holding that college disciplinary proceedings must be public, at least in the absence of a request by the student that the hearing be made public. In *Dixon* v. *Alabama State Board of Education, supra,* 294 F.2d 150, at pages 158-159, it was held that whether the hearing was to be open or closed should be left to the discretion of the university. At the end of the first hearing plaintiff insisted on returning to the chairman his copy of the Van Houten report, stating that "he was afraid that it might get lost and people would learn of it." In view of this, it seems that plaintiff is straining at gnats in contending that he was deprived of due process because the hearing was not public. We can imagine what his position would now be if the hearing had been public.

### (3) *Right to counsel and not to testify.*

Plaintiff at the beginning of the hearing was advised of his right to counsel and between hearings was urged to get counsel. He was not injured because he was not so instructed prior to the hearing. Nor was he injured because he was not told that he had the right not to testify; particularly is that so in view of the informal discussions between Dean Van Houten and him during the preliminary investigations. We know of no requirement that he be informed of a right not to testify. As hereinbefore set forth, these administrative proceedings are not to be conducted with the sophistication of a criminal proceeding. No reason appears why a student facing possible discipline should not discuss the charges against him.

### (4) *Record of the proceedings.*

Here again there is no requirement that such a proceeding be conducted with the panoply of a criminal trial. A secretary was present who took notes of the hearings. Plaintiff was shown four-page minutes of

the hearing which set forth in particularity the charges against plaintiff which the committee had considered and the evidence produced, including plaintiff's statements. Plaintiff found no fault with these summaries of the proceedings.

(5) *Witnesses.*

Plaintiff was advised in these reports of the persons on whose information the reports were made.

(6) *Evidence not available to plaintiff.*

Plaintiff contends that the committee relied on evidence not available to plaintiff. His only contention in this regard is that the committee examined witnesses in his absence. This was merely speculation on his part and was flatly denied by Dean Van Houten and Chairman Degnan.

(7) Plaintiff complains that as most of the testimony was in written form he was not given an opportunity to cross-examine the writers. However, at no time did he object to this mode of procedure nor did he request that the writers be called.

(8) Plaintiff was not excluded from the hearings while testimony was being taken. None was taken in his absence.

(9) Plaintiff contends that he was not charged with anything, just that his cooperation was needed to find out who was responsible for the alleged acts. Except at his first meeting with Dean Van Houten, this is not true, being refuted by the dean, Chairman Degnan, and plaintiff's own letter hereinbefore referred to.

(10) *The committee was biased.*

Plaintiff contends that the committee was biased and partial. He fails to set forth any grounds for this statement. Moreover, the fact that the committee were not satisfied at the first hearing that the evidence proved plaintiff's guilt and continued the matter for further investigation and hearing is in itself some evidence of lack of bias.

(11) *The committee did not provide counsel.*

Plaintiff cites no authority, and we have found none, holding that in a disciplinary proceeding a college is required to supply counsel for the student.

A study of the record proves that plaintiff was given a very fair hearing and in no wise was deprived of procedural due process, and

that the superior court's findings that the proceedings were conducted in accordance with the requirements of due process, that the findings of the committee were based upon substantial evidence, and that the contract between plaintiff and the university was not breached, are true and correct.

Judgment affirmed. The purported appeal from the order denying motion for new trial is dismissed.

Devine, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied February 2, 1972, and appellant's petition for a hearing by the Supreme Court was denied March 8, 1972.