2001 OK CIV APP 33

**Perry MASON, Plaintiff/Appellant,**

**v.**

**STATE of Oklahoma, ex rel. The BOARD OF REGENTS OF the UNIVERSITY OF OKLAHOMA, and Joseph Harroz, Individually and in his official capacity; Suzette Dyer, Individually and in her official capacity; Fred Gipson, Individually and in his official capacity; and Betty Baker, Individually and in her official capacity, Defendants/Appellees.**

**No. 94522.**

Court of Civil Appeals of Oklahoma, Division 1.

Dec. 19, 2000.

Certiorari Denied Feb. 27, 2001.

Perry Mason, Norman, Oklahoma, Pro Se.

Fred Gipson, Joseph Harroz, Jr., University of Oklahoma, Office of Legal Counsel, Norman, Oklahoma, for Defendants/Appellees.

BUETTNER, Judge:

¶1 Plaintiff/Appellant Perry Mason appeals from the trial court's order dismissing Mason's suit for failure to state a claim. Mason originally filed his petition in the district court alleging causes of action for false light and other torts related to the decision, made by Defendant/Appellee State of Oklahoma ex rel. Board of Regents of the University of Oklahoma (OU), to deny Mason's application to be readmitted to the OU College of Law. After that petition was dismissed, Mason filed a substantially similar amended petition which was also dismissed. From that dismissal, Mason appeals. Because we find the trial court correctly determined that Mason had presented no facts which would support any of the asserted causes of action, we affirm the dismissal.

¶2 Mason was a student at the OU College of Law from August 1994 until he was expelled in July 1997. Mason was expelled following a hearing, of which he received notice, before the Campus Disciplinary Council. The ground for expulsion was Mason's failure to report income on his student financial aid application. Two days after he received a letter from OU President David Boren informing him that he had been expelled, Mason wrote a letter to OU in which he demanded to be readmitted. Mason submitted several such demands in various forms. The demand for readmission

which was rejected, and which is the subject of the instant lawsuit, is an e-mail application for admission sent March 26, 1999. Mason was involved in a prior suit in which Defendant/Appellee Betty Baker obtained a victim's protective order (VPO) against Mason. Although Mason attempts to argue the fairness of the VPO proceeding in his materials submitted with the instant appeal, we note that the VPO case is final and is *res judicata*.[1] See *Baker v. Mason*, 1998 OK CIV APP 60, 958 P.2d 808 (cert.denied). We therefore will not consider any arguments relating to that matter in the instant appeal. Further, Mason's Amended Petition in Error has attempted to add causes of action not presented in the trial court. We will not consider any matters not presented to the trial court.

¶ 3 In his original petition, filed November 11, 1999, Mason alleged causes of action against OU for tortious denial of his March 26, 1999 application for readmission to the OU College of Law. Included in his claims were causes of action for false light;[2] intentional infliction of emotional distress; breach of implied contract;[3] and violation of 25 O.S. 1991 § 1302.[4]

¶ 4 OU responded to that petition with a motion to dismiss. OU asserted that the false light and intentional infliction of emotional distress claims were barred by the two year tort statute of limitations because he was expelled in July 1997 but waited until November 1999 to file his claims. OU further alleged that Mason failed to timely file the claims pursuant to the Governmental Tort Claims Act. OU responded to Mason's asserted cause of action for intentional infliction of emotional distress by asserting that its act of denying Mason's application for readmission to the College of Law did not amount to outrageous conduct as required for an action for intentional infliction of emotional distress. In response to Mason's claim for breach of implied contract, OU asserted that Mason had failed to allege facts establishing the existence of a contract between Mason and OU. Finally, OU argued that Mason had failed to state a claim under 25 O.S.1991 § 1302 because Mason was not an employee of the university, Mason failed to exhaust his administrative remedies, and that any claim under § 1302 must be brought within 180 days, so that any such claim in the instant case was out of time.

¶ 5 The trial court granted summary judgment in favor of OU as to all claims arising out of events occurring prior to March 26, 1999. As to all claims arising out of events after March 26, 1999, the trial court granted OU's motion to dismiss for failure to state a claim, but granted Mason leave to file an amended petition. Mason filed his amended petition January 31, 2000.

¶ 6 In his amended petition, Mason alleged he was unlawfully denied readmission to OU's College of Law on March 26, 1999. Mason alleged that the denial of readmission amounted to negligent and intentional infliction of emotional distress, denial of due process, violation of public policy, and breach of implied contract. OU responded with another motion to dismiss for failure to state a claim. On April 3, 2000, the trial court dismissed Mason's amended petition, with prejudice, for failure to state a claim.

¶ 7 Mason now appeals the dismissal of his amended petition. When a petition is dismissed for failure to state a claim, the plaintiff must be granted leave to amend the pleading if the defect can be remedied. 12

---

1. The doctrine of *res judicata* provides that a judgment in an action bars the parties from relitigating the adjudicated claim as well as any theories or issues that were actually decided or which could have been decided. *McDaneld v. Lynn Hickey Dodge, Inc.*, 1999 OK 30, 979 P.2d 252, 255–6.

2. Mason alleged OU placed him in a false light: 1) in the campus disciplinary proceeding which resulted in his expulsion from OU; 2) in the VPO proceeding; 3) in OU's refusal to allow his dog to accompany him to class; 4) in OU's "unwillingness to treat (Mason's) requests for other ac-

commodation seriously;" and 5) in using his financial aid documents as a pretext to expel him from the university.

3. Mason alleged OU breached an implied contract both in the student disciplinary proceeding in which he was expelled and in the denial of his requests for readmission.

4. That section prohibits discrimination in *employment* on the basis of race, color, religion, sex, national origin, age or handicap.

O.S.1991 § 2012(G). If the pleading is not amended, a final judgment of dismissal with prejudice may be entered. *Id.* OU alleged in part that Mason failed to substantively amend his petition before refiling it as an amended petition. An order dismissing a petition with prejudice, entered pursuant to 12 O.S.1991 § 2012(G) constitutes a final appealable order from which the merits of the substantive claim for relief may be reviewed. *Brown v. Founders Bank and Trust Co.,* 1994 OK 130, 890 P.2d 855, 861.

¶ 8 This court reviews a grant of a motion to dismiss for failure to state a claim upon which relief can be granted *de novo* to determine whether relief is possible under any set of facts that could be proved, consistent with the allegations of the pleadings. *Lockhart v. Loosen,* 1997 OK 103, 943 P.2d 1074, 1077; *Sturgeon v. Retherford Publications, Inc.,* 1999 OK CIV APP 78, 987 P.2d 1218, 1221–2. Further, all inferences and conclusions which can be deduced from the evidentiary materials must be drawn in the light most favorable to the non-moving party. *Lockhart,* 943 P.2d at 1077–8. A motion to dismiss should be denied unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief. *Sturgeon,* 987 P.2d at 1222. With this standard in mind, we review each of the allegations in Mason's amended petition to determine if he alleged any set of facts upon which relief could be granted.

¶ 9 Mason's first allegation in his amended petition is that he was unlawfully denied readmission to OU's College of Law March 26, 1999. Mason casts this as "negligent tortuous (*sic*) denial which includes a denied law degree, result(ing) in the loss of income normally associated with a (*sic*) attorney's life (*sic*) time expectation of earnings which is more than $500,000.00."[5] To make a prima facie case of negligence, a plaintiff must establish 1) a duty owed by the defendant to the plaintiff; 2) a breach of that duty; and 3) harm to the plaintiff proximately caused by the breach of duty. *Lockhart,*

*supra,* 943 P.2d at 1079. Mason failed to allege the existence of a duty, or facts supporting the existence of a duty, on the part of OU to readmit him to its College of Law. Further, the materials presented to the trial court fail to establish any such duty. Absent a duty, there can be no negligence. Taking the allegations in the light most favorable to Mason, we find no set of facts which would entitle Mason to relief for negligent denial of readmission to OU.

¶ 10 Mason's next asserted cause of action is that OU failed to follow public policy in denying Mason readmission "without any due process"[6] when OU "refused to staff (Mason's) request for readmission," and failed to send Mason application materials or discuss his readmission with College of Law personnel, all of which demonstrate malicious bias against Mason. It is apparent from Mason's response to OU's motion to dismiss that in this allegation, Mason is arguing that the public policy exception to the at-will employment doctrine should be extended to a case of refusal to readmit a student to a university. The public policy exception was adopted in Oklahoma in *Burk v. K–Mart,* 1989 OK 22, 770 P.2d 24. It applies as an exception to the at-will termination of employment where "the discharge is contrary to a clear mandate of public policy as articulated by constitutional, statutory, or decisional law." Case law has established that the *Burk* exception applies only to cases of wrongful *termination of employment.* See *Collier v. Insignia Financial Group,* 1999 OK 49, 981 P.2d 321, 323; *Williams v. Dub Ross Co.,* 1995 OK CIV APP 9, 895 P.2d 1344; *Sanchez v. Philip Morris Inc.,* 992 F.2d 244, 248–9 (10th Cir.1993). Mason has made no claim for wrongful termination of employment. *Burk* requires that a plaintiff enunciate a clear mandate of public policy which has been violated by the employment termination. Mason asserts that education should be a public policy goal (relying on a quote from presidential candidate George W. Bush made on a television program) and that, accordingly, we should extend the ex-

---

5. The record indicates that after he was expelled from OU, Mason was admitted to another law school, but he chose not to enroll.

6. We address Mason's due process allegation and his claim for breach of implied contract below.

ception in this case. While we do not hesitate to agree that higher education is a public policy goal, we reject the notion that this court should create a tort cause of action for wrongful non-readmission.

¶ 11 Mason's next claim in his amended petition is that the denial of readmission constituted negligent infliction of emotional distress. In its motion to dismiss, OU asserted that Oklahoma does not recognize a cause of action for negligent infliction of emotional distress, citing *Taylor v. Pepsi–Cola Co.*, 196 F.3d 1106, 1111 (10th Cir.1999) and *Kraszewski v. Baptist Medical Center of Oklahoma, Inc.*, 1996 OK 141, 916 P.2d 241, 243. This bare statement is not quite correct. As support for its statement that Oklahoma does not recognize negligent infliction of emotional distress as an independent tort, *Taylor* cites *Gaylord Entertainment Co. v. Thompson*, 1998 OK 30, 958 P.2d 128, which merely states that Oklahoma recognizes the independent tort of *intentional* infliction of emotional distress. 958 P.2d at 149. The relevant portion of *Kraszewski* is footnote 1, which provides:

> The (plaintiff) also argues that he may recover for his emotional suffering under the theory of negligent infliction of emotional distress. *We agree.* However, unlike a cause of action for intentional infliction of emotional distress, negligent infliction of emotional distress is not an independent tort.... Rather, before damages for mental suffering may be collected, the plaintiff must establish: a duty on the part of the defendant to protect the plaintiff from injury; a failure of the defendant to perform the duty; and an injury to the plaintiff resulting from the failure. (Emphasis supplied, citations omitted).

In *Kraszewski*, the negligence was admitted. The Oklahoma Supreme Court later clarified this statement somewhat, holding that negligent infliction of emotional distress "is not an independent tort, but is in effect the tort of negligence." *Lockhart, supra*, 943 P.2d at 1081. For this statement, *Lockhart* relied on *Burgess v. Superior Court*, 2 Cal.4th 1064, 831 P.2d 1197, 1200, 9 Cal.Rptr.2d 615, which added to the above statement that the tradi-

tional negligence elements of duty, breach, causation and damages apply. That court further noted that whether a defendant owes a duty of care is a question of law.

¶ 12 OU is correct to the extent that negligent infliction of emotional distress is not an independent tort and has no application to the facts alleged in this case. We have determined above that OU did not owe a duty to Mason to readmit him after he had been expelled. Further, we hold as a matter of law, that Mason has failed to allege conduct on the part of OU which is sufficient to meet the "outrageous" element of an action for infliction of emotional distress. We discuss that issue further in regard to Mason's claim for intentional infliction of emotional distress, but we conclude here that Mason's allegations do not present any set of facts which would support a cause of action for negligent infliction of emotional distress.

¶ 13 We now address Mason's cause of action for intentional infliction of emotional distress. Mason asserts that the denial of his March 26, 1999 application for readmission to OU was done knowingly and with deliberation against Mason and caused Mason "extreme stress, anxiety and depression–complicating and intensifying a previous and current medical condition of which (OU was) well aware." To establish a cause of action for intentional infliction of emotional distress, a plaintiff must prove extreme and outrageous conduct done intentionally or recklessly by the defendant which resulted in severe emotional distress in the plaintiff. *Kraszewski, supra*, 916 P.2d at 248, citing *Breeden v. League Services Corp.*, 1978 OK 27, 575 P.2d 1374, 1377–78.

¶ 14 In *Breeden*, the court held that the tort of intentional infliction of emotional distress is governed by the narrow standard of *Restatement (Second) of Torts* § 46. That section provides, in part, that "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, . . . ." The court in *Breeden* further explained: "The court, in the first instance, must determine whether the defendant's conduct may reasonably be regarded so extreme and outrageous as to per-

mit recovery ..." *Id.* at 1377. The Restatement provides guidance for the trial court's determination in the comments following § 46. Comment d indicates "liability .has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." That comment further recites that the conduct must be such that, upon hearing of it, a reasonable member of the community might exclaim "outrageous!" The conduct which Mason alleges is outrageous in the instant case is a university's denial of a student's application for readmission (and refusal to seriously consider such application) following the student's expulsion. We have no difficulty in affirming the trial court's decision that this conduct falls far short of the level of "outrageous" conduct necessary to support a cause of action for intentional infliction of emotional distress.

¶ 15 The final cause of action asserted in Mason's amended petition is breach of implied contract. Mason alleged that through its rules and regulations, through Oklahoma public policy, and through years of customary practice and tradition, OU created an implied contract with Mason which OU breached when it denied him readmission. Mason includes the following numbered statements with his breach of implied contract allegation:

1. Due process in the student readmission procedures,

2. When he was refused readmission without any stated reason,

3. When he was maliciously denied readmission without any consideration or counsel.

It is evident from the evidentiary materials submitted with his response to OU's Motion to Dismiss that the crux of Mason's implied contract action is that OU's student hand-book indicates that, after being expelled, readmission to the university will be granted only after careful consideration. Mason argues he was denied that careful consideration. Mason further states, in his response to the motion to dismiss, that he signed an agreement to abide by the "School of Law Code of Academic Responsibility" and was lead to believe that if he passed his courses with a 5.0 grade point average, he would graduate.

¶ 16 While we are not concerned here with the expulsion procedure, we may assume that Mason was expelled for failure to comply with the Student Code,[7] and that therefore, the implied contract which may exist between *students* and a university was breached or terminated upon Mason's expulsion. We will assume with Mason that, while he was a student, he was party to a contract with OU. See *Waller v. Southern Illinois University*, 125 F.3d 541, 542 (7th Cir.1997); *Andersen v. Regents of University of California*, 99 Cal.Rptr. 531, 22 Cal.App.3d 763 (1972); *Neel v. I.U. Bd. Of Trustees*, 435 N.E.2d 607 (Ind.App.1982); *Corso v. Creighton University*, 731 F.2d 529 (C.A.Neb.1984); *In re Antioch University*, 418 A.2d 105 (D.C. 1980); *Andre v. Pace University*, 170 Misc.2d 893, 655 N.Y.S.2d 777 (N.Y.Sup.App. 1996). However, once Mason was expelled, he was no longer party to any contract with OU. *See Andersen, supra,* which held that the implied contract arises *upon enrollment*.

¶ 17 Further, we find that, while the Student Code indicated that expelled students would only be readmitted after complete consideration, that provision did not require the university to give consideration to the case of every expelled student who sought readmission. Rather, the code provision indicates that readmission of an expelled student is an extraordinary situation that would require "complete consideration."[8] At

---

7. The record indicates "Student Code" is the proper name for the document which Mason at times refers to as the code of academic conduct.

8. Title 17, ¶ 2(2) provides:
   Expulsion: Termination of student status for an indefinite period. The conditions of readmission, if any, shall be stated in the order or expulsion. When an offense is so severe that the University will not allow the student to reenroll, the student will be expelled. Expulsion is not a permanent separation, but neither is a definite time set when return is expected. If a student is reinstated after an expulsion, it is only after a complete consideration of his or her case.

least one court has held that expulsion means that a student may never again attend the institution. *Perlman v. Shasta Joint Junior College Dist. Bd. of Trustees,* 9 Cal.App.3d 873, 880, 88 Cal.Rptr. 563, 568 (1970). Further,

> the decision to grant or deny admission to a student is a quintessential matter of academic judgment. Courts have long recognized that matters of academic judgment are generally better left to the educational institutions than to the judiciary and have accorded great deference when such matters are at issue.... 'Plainly (judges) may not override (the faculty's professional judgment) unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.'

*Mangla v. Brown University,* 135 F.3d 80 (1st Cir.1998). Whether to readmit Mason was a discretionary matter left to the academic judgment of OU officials.

¶ 18 Mason has included in his argument that OU denied him due process when it failed to seriously consider his application materials. We note that the record does not contain allegations or evidence to support this claim, particularly where the application was an email submission rather than an actual university application form. However, it has been repeatedly held that an applicant has no property interest in admission to law school, nor does a state university's rejection of a law school application implicate any liberty interest the applicant may have in pursuing a legal career, as Mason alleged he was denied by OU. See *Tobin v. University of Maine System,* 59 F.Supp.2d 87 (D.Maine 1999) (student who was neither accepted nor enrolled has no more than a unilateral expectation of admission) citing *Phelps v. Washburn Univ. of Topeka,* 632 F.Supp. 455, 459 (D.Kan.1986) (no property interest in admission to law school); *Selman v. Harvard Med. School,* 494 F.Supp. 603, 619 (S.D.N.Y.1980), aff'd. 636 F.2d 1204 (2nd Cir.1980); *Ramos v. Texas Tech Univ.,* 441 F.Supp. 1050, 1055 (N.D.Tex.1977) aff'd. 566 F.2d 573 (5th Cir.1978); *Szejner v. University of Alaska,* 944 P.2d 481, 486 (Alaska 1997).

It is evident that, if no property interest exists in admission to law school in the first place, then there can be no property interest in admission *after* expulsion for violation of the university's rules. We find that no set of facts could be proved in the instant case to support a finding of the existence of an implied contract, nor breach of such contract. We further hold that, under the allegations presented, no set of facts could be proved to support a claim for a due process violation.

¶ 19 After *de novo* review of the record on appeal, we have concluded that Mason can prove no set of facts which would entitle him to relief on any of the causes of action asserted in his amended petition. For this reason, we affirm the trial court's grant of dismissal with prejudice to refiling.

¶ 20 AFFIRMED.

¶ 21 CARL B. JONES, P.J., and GARRETT, J., concur.