Jon Tom STATON, Plaintiff-Appellant,

v.

James K. MAYES et al.,
Defendants-Appellees.

No. 75–1332.

United States Court of Appeals,
Tenth Circuit.

Argued Jan. 28, 1976.

Decided Feb. 15, 1977.

As Amended on Denial of Rehearing and
Rehearing En Banc April 11, 1977.

As Amended on Denial of Rehearing
May 9, 1977.*

* The petition of appellees for rehearing was denied by order of Judges Holloway and Doyle, Judge Barrett voting to grant rehearing; the petition of appellees for rehearing en banc was denied by Judges Hill, Holloway, McWilliams and Doyle, Chief Judge Lewis and Judges Seth and Barrett voting to grant rehearing en banc.

The petition of appellant for rehearing was denied on May 9, 1977, by the following order of Judges Holloway, Barrett and Doyle:

On consideration of appellant's petition for rehearing directed to our revised opinion, and the Court being satisfied that no claim for reinstatement beyond the June 30, 1974, expiration of appellant's contracts was made or urged to the trial court and that a court order for reinstatement would be inappropirate in the circumstances before us, the appellant's petition is denied.

Kay Wilson, Jr., Muskogee, Okl., for plaintiff-appellant.

Andrew Wilcoxen, Muskogee, Okl. (Bruce Green, Pearson & Green, Muskogee, Okl., on the brief), for defendants-appellees.

Before HOLLOWAY, BARRETT and DOYLE, Circuit Judges.

HOLLOWAY, Circuit Judge.

This civil rights suit challenges the dismissal of plaintiff, Dr. Staton, as superintendent of Independent School District No. 20 of Muskogee County, Oklahoma, which is

named a defendant. Defendants Mayes, Wade and Moore were three members of the five-member board who caused the dismissal in February, 1973, following a hearing on charges of willful neglect of duty and incompetence. In April, 1973; this suit was brought alleging denial of due process and seeking reinstatement, expungement of the board's action, damages and other relief. After an evidentiary hearing the trial court rejected the constitutional claims and dismissed the action, and this appeal followed.

For some time before the dismissal, defendant Moore had voted against renewing plaintiff's contract. Defendant Wade had also voted once not to renew. However, they were outvoted and plaintiff had been continued as superintendent. Shortly before a school board election in January, 1973, a board majority voted for a renewal again and a contract with plaintiff extending to June 30, 1974, was approved.

In his election campaign defendant Mayes stated he would vote for a change in superintendent. He was elected and then took office on February 5, 1973, when the board met and organized. At that same meeting, the board voted a proposed dismissal of plaintiff. A letter was sent to Dr. Staton the next day notifying him of the proposed dismissal on grounds of willful neglect of duty and incompetence, and of a hearing scheduled on February 19.[1]

Dr. Staton appeared at the hearing with counsel and 12 witnesses. After the first witness called by the board to support the charges was sworn, but before he began to testify, plaintiff's attorney objected to the introduction of any testimony, challenging the proceedings on several grounds.[2] The board heard the objections but went forward with the hearing, which Dr. Staton had transcribed.[3]

The hearing was conducted on the evenings of February 19 and 20. On February 22 at a third session, defendants Mayes, Moore and Wade voted to dismiss Dr. Staton effective March 15, with suspension of all his authority to continue until that date. Board member Matthews voted not to dismiss plaintiff and Mrs. Chandler was absent. The board's action was reflected as a part of its minutes.[4] There were no further written or oral statements of findings on the dismissal.

1. The letter stated:

February 6, 1973
Muskogee, Oklahoma
Dr. Jon Tom Staton
4301 West Broadway
Muskogee, Oklahoma    74401
Dear Dr. Staton:
    The Muskogee School Board of District I–20 has voted to dismiss you as Superintendent of Schools for said District.
    Please be advised that this is a notice of the proposed dismissal and that the charges against you are willful neglect of duty and incompetency. These charges are brought by this School Board.
    Please further be advised that a hearing on the proposed dismissal shall be held at the Education Center, 570 North 6th Street, Muskogee, Oklahoma on February 19, 1973, at 7:30 P.M.
    Please be further advised that you are entitled to be present and represented by counsel at said hearing.
                Yours very truly,
                (signed)
                MIKE MOORE
                President of the Muskogee
                School Board, District I–20

2. Plaintiff's counsel objected that: (1) the superintendent was dismissed prior to the hearing, contrary to the Oklahoma statutes; (2) the notice failed to state who brought the charges; (3) the charges failed to state what the acts constituting alleged incompetence or willful neglect of duty were, or when committed, failing to apprise of matters necessary for defense; (4) not all the board was present (one member was absent); (5) there was a denial of due process; (6) the board was exceeding its jurisdiction to hold a hearing, not having served the teacher with a statement of charges or an identification of accusers; and (7) the board was biased and there was no procedure to challenge that bias.

3. The transcript is part of our record, Plaintiff's Ex. 17, now R. IV.

4. The minutes stated (R. III, 203):
    3. *Dismissal of Dr. Jon Tom Staton*
    IT WAS MOVED by Mr. Mayes and seconded by Mr. Wade THAT DR. JON TOM STATON BE DISMISSED, HIS DISMISSAL TO BE EFFECTIVE MARCH 15, 1973, THE FIRST TWO WEEKS IN MARCH TO BE CONSIDERED THE USUAL VACATION AND THAT THE SUSPENSION OF ALL RE-

Although several grounds were alleged as the basis of the civil rights complaint, the court trial was confined to two issues, adequacy of notice of the hearing and alleged bias by the board. The trial court's memorandum opinion found against plaintiff on both grounds and dismissed. On appeal plaintiff makes these principal arguments, claiming denial of procedural due process: (1) the notice gave no specifics of the acts or deficiencies considered to amount to willful neglect of duty or incompetence, nor any of the adverse witnesses; and (2) the board majority causing the dismissal had made public statements or private commitments against plaintiff, showing a biased tribunal. Plaintiff argues that the adverse testimony established no incompetence or willful neglect of duty and that it dealt only with vague terms such as "disharmony." He says that any "disharmony" was only reaction to an integration system, a teacher evaluation program and an annexation plan, all of which the board had ordered Dr. Staton to implement. Plaintiff also argues there were no findings by the board after its hearing and no adequate findings by the trial court on the issues before it. (Brief of Appellant, 15–16, 21, 30, 37).

### The right to procedural due process

As the predicate for his procedural due process claim, plaintiff argues that he had a property interest by virtue of his contracts that had been renewed to extend to June 30, 1974, at $25,000 per year, with $1\frac{5}{12}$ years

remaining (Brief of Appellant, 15). And he asserts that he had a deprivation of liberty and property by the stigma of being branded incompetent and guilty of willful neglect of duty.

We must agree with both contentions.[5] Plaintiff had a legitimate claim of entitlement to his position derived from his contracts. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548. Moreover, this was a proposed dismissal of a professional officer by a public body for willful neglect of duty and incompetence. These charges were made publicly and might seriously damage plaintiff's standing and associations in his community and affect his good name and reputation.[6] See id. at 573, 92 S.Ct. 2701; *Wellner v. Minnesota State Junior College Board,* 487 F.2d 153, 155–56 (8th Cir.); *Huntley v. Community School Board of Brooklyn,* 543 F.2d 979, 985 (2d Cir.). Dismissal on such grounds would likely have serious effect on his ability to take advantage of other employment,[7] see *Powers v. Mancos School District,* 539 F.2d 38, 43 (10th Cir.), there being no mere private communication of the grounds for discharge as in *Bishop v. Wood,* 426 U.S. 341, 347–348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684.

We are convinced that the procedural due process guarantee applied to insure the plaintiff fundamentally fair procedures in connection with these proceedings concerning his proposed discharge.

### Adequacy of the notice

Plaintiff argues that the mere notice of charges of incompetence and willful neglect

---

SPONSIBILITIES AND AUTHORITY CONTINUE UNTIL SUCH DATE.

Vote: Yes—Mayes, Wade, Moore. No—Matthews. The motion was declared carried by a three to one vote.

5. We do not understand the defendants' arguments to deny that "property" and "liberty" interests were involved.

6. The February 5 meeting where it was decided that notice of the proposed dismissal should be given for willful neglect of duty and incompetency was a regular meeting attended by representatives of the news media and a room full of guests (see Minutes, R. III, 210). The hearings on February 19 and 20 were also open meet-

ings, with numerous witnesses present to testify. And the February 22 meeting where the decision was made to dismiss plaintiff was also attended by representatives of the news media and guests (see Minutes, R. III, 203). Thus the circumstances were unlike the private communication of reasons for dismissal in *Bishop v. Wood,* 426 U.S. 341, 347–348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684.

7. There was uncontradicted expert testimony at trial as to the adverse effect on a school official's career of a dismissal based on such charges (R. I, 87–91).

of duty, without specificity as to acts or deficiencies alleged, and without naming adverse witnesses, amounted to a denial of due process (Brief of Appellant, 15, 28).

■ At a minimum, the Due Process Clause of the Fourteenth Amendment required notice and an opportunity for hearing appropriate to the nature of the case before deprivation of the liberty or property interests of plaintiff which have been identified. See *Roth,* supra, 408 U.S. at 573, 576 n. 15, 92 S.Ct. 2701; *Goss v. Lopez,* 419 U.S. 565, 579, 581, 95 S.Ct. 729, 42 L.Ed.2d 725. These basic requirements must be determined with consideration of both the nature of the state function involved as well as of the private interests affected by the governmental action. *Cafeteria and Restaurant Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230. And in connection with possible judicial interposition in cases like this, we must be mindful of the commitment in our Nation of public education to the control of state and local authorities. *Goss v. Lopez,* supra, 418 U.S. at 578, 95 S.Ct. 729.

The trial court rejected the argument on lack of adequate notice, pointing to the use in the letter of the statutory terms of grounds for dismissal, to the plaintiff's failure to ask for a bill of particulars or a more definite notice, and to plaintiff's apparent realization of what was involved as shown by his preparedness to meet the charges at the hearing.

It is true that the charges of incompetency and willful neglect of duty were grounds of removal provided in 70 O.S.A. § 6–103.[8] However we cannot agree that this, without more, shows meaningful notice of what one must be prepared to meet. We do agree that the lack of any objection to the notice letter and the absence of any request for a more definite statement of the charges are significant. There was a reasonable time interval of 13 days between

mailing the notice and the hearing itself. Not until the first witness at the hearing was called was any objection made to adequacy of the notice.

Plaintiff objects to the trial court's reasoning, citing *Dunham v. Crosby,* 435 F.2d 1177 (1st Cir.), which did reject a similar argument on lack of request for a hearing. The First Circuit held there that a teacher was not barred from asserting a due process claim of lack of a hearing by failure to request a hearing. We have no disagreement with the reasoning there applied.

■ We feel that here, however, since *some* notice was given to the plaintiff a reasonable time ahead of the scheduled hearing, an objection to the sufficiency of the notice not made until commencement of the hearing came too late. In fact, since his counsel made the objection quite fully and formally as the testimony started, with no request for a continuance, it is difficult for plaintiff to argue against a ruling of a knowing waiver. Particulars of asserted grounds for dismissal have been furnished in similar cases, e. g., *Simard v. Board of Education of Town of Groton,* 473 F.2d 988, 991 n.5 (2d Cir.); *Blunt v. Marion County School Board,* 515 F.2d 951, 954 (5th Cir.), and in the circumstances before us, we feel that the belated claim of insufficiency of the notice does not demonstrate a denial of due process. Cf. *Grimes v. Nottoway County School Board,* 462 F.2d 650, 653 (4th Cir.). Moreover, there is no persuasive showing that the defense was impeded by lack of further details. *Simard v. Board of Education of Town of Groton,* supra at 994.

In sum, we cannot sustain the claim that there was a defective notice which amounted to a denial of due process.

### The claim of a biased tribunal

Plaintiff's most substantial claim of denial of procedural due process is that the board was a biased tribunal. The point

---

8. While no pendent claim of any failure to meet State notice requirements is asserted, we note that the Oklahoma Court has enforced a state statutory requirement of notice containing a statement of causes related to a legal cause for dismissal, before a hearing. See *Lovelace v. Ingram,* 518 P.2d 1102 (Okl.). Of course, in addition to state requirements, federal due process minimum standards must be observed.

requires examination of the background and of the system of school administration involved.

The board is an elective body under Oklahoma law. 70 O.S.A. § 5–107A. At the time this dispute arose the board was the only body empowered to dismiss a superintendent for willful neglect of duty or incompetency.[9] In cases involving these grounds for removal, the board's decision at the hearing was final. 70 O.S.A. § 6–103.[10] No provision was made for a hearing by an alternative tribunal or for disqualification of board members on a challenge of bias or prejudice.

At the opening of the hearing on the proposed dismissal of Dr. Staton, several objections to the proceeding going forward were made. One objection was "to the bias of the board and no procedure to challenge that bias and constituting deprivation of due process." (R. IV, 9).

We start with a fundamental constitutional principle: "A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases." *In Re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942; see also *Goldberg v. Kelly,* 397 U.S. 254, 271, 90 S.Ct. 1011, 25 L.Ed.2d 287; *Wong Yang Sung v. McGrath,* 339 U.S. 33, 45–46, 50, 70 S.Ct. 445, 94 L.Ed. 616. Due process itself however, is a term that "negates any concept of inflexible procedures universally applicable to every imaginable situation." *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230. In a recent similar case the Supreme Court stated that "[d]etermining what process is due in a given setting requires the Court to take into account the individual's stake in the decision at issue as well as the State's interest in a particular procedure for making it." *Hortonville Joint School District v. Horton-*

*ville Education Association,* 426 U.S. 482, 494, 96 S.Ct. 2308, 2315, 49 L.Ed.2d 1.

There is an obvious interest of the State in the particular procedure provided for removal of school personnel. As the trial court observed, there is a system of administration by an elective board which governs the affairs of the school district and employs and dismisses superintendents and teachers. And as in the *Hortonville* case, when the hearing was held the board was the only body empowered to employ and dismiss. In such a case we have said that out of necessity, disqualification will not be permitted to destroy the only tribunal with power to act. See *Brinkley v. Hassig,* 83 F.2d 351, 357 (10th Cir.).

On the other hand, an individual like the plaintiff has a profound interest in the fairness of the hearing tribunal whose decision may jeopardize his property interest in his position and his liberty interest of standing and reputation in his profession. See *Board of Regents v. Roth,* 408 U.S. 564, 573, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548. In connection with the fairness and the appearance of fairness of the board, we must weigh these circumstances:

During the month before the hearing, defendant Mayes made public statements in his campaign for election to the board concerning Dr. Staton. In newspaper advertising Mayes stated that defendants Moore and Wade had publicly said that no progress could be made with school problems until there was a new superintendent, that he, Mayes, was pledged to seek a new top level administration for the schools, that from discussions with parents, teachers and citizens it had become apparent to him that the trouble lay with the superintendent, and that he would vote to make the necessary change. (See Plaintiff's Exhibits 12, 13 and 14 in the appendix to this opinion). Mayes testified at trial, however, that he had not committed himself before hear-

---

9. As noted in discussing our disposition, this procedure is now changed and certain appellate bodies may now make the final decision on removal after a board hearing.

10. 70 O.S.A. § 6–103 affords procedures for the removal of teachers. However § 70 O.S.A. § 1–116 provides that the definition of a "teacher" includes superintendents generally for purposes of the Oklahoma school code.

ing the evidence to vote for plaintiff's dismissal and felt the decision had to be based on the evidence at the hearing. (R. I, 98–99). It was Mayes who moved for the dismissal, the motion carrying by the votes of Mayes, Moore and Wade. (See note 4, supra).

The other defendants testified at trial also. Moore said he listened to the evidence at the hearing and required proof to be there and based his decision on the evidence he heard at the hearing. He admitted going to visit with a board member, Mrs. Chandler, and saying there was a possibility plaintiff would be leaving and if they could "be together on the board and not disrupt the board, where we could continue to have school for children, it would be best for all of us." (Id. at 102–03).

Defendant Wade testified that he based his decision on disruption between the principal, the teachers and the community and felt that plaintiff was the prime cause after he had heard all the evidence, and based his decision on that. He said he had not been committed to terminate plaintiff before hearing the evidence. He admitted saying to Mrs. Chandler in late 1972, after another hearing in Oklahoma City, that Dr. Staton "has got to go." (Id. at 106–07).

The firm public statements before the hearing by defendant Mayes for the removal of Dr. Staton, and the discussions by defendants Moore and Wade as admitted, reveal a tribunal not meeting the demands of due process for a hearing with fairness and the appearance of fairness. *Cinderella Career and Finishing Schools, Inc. v. F.T.C.*, 138 U.S.App.D.C. 152, 425 F.2d 583, 590–92; *Texaco, Inc. v. F.T.C.*, 118 U.S.App.D.C. 366, 336 F.2d 754, 759–60. These were not mere statements on a policy issue related to the dispute, leaving the decision maker capable of judging a particular controversy fairly on the basis of its own circumstances. *Hortonville,* supra, 426 U.S. at 492–493, 96 S.Ct. at 2314. Nor was this simply a case of the instigation of charges and a statement of them during an investigatory phase by the body that will later decide the merits of the charges. *E. g., Withrow v. Larkin,* 421 U.S. 35, 52–55, 95 S.Ct. 1456, 43 L.Ed.2d 712; and see *Kennecott Copper Corp. v. F.T.C.,* 467 F.2d 67, 79–80 (10th Cir.).

Instead this case involves statements on the merits by those who must make factual determinations on contested fact issues of alleged incompetence and willful neglect of duty, where the fact finding is critical. *Cinderella Career and Finishing Schools, Inc. v. F.T.C.,* 138 U.S.App.D.C. 152, 425 F.2d 583, 590–92. The hearing involved the possibility of an erroneous and unfair factual decision which was absent in *Hortonville,* where the basic facts were admitted. See, 426 U.S. at 494, 96 S.Ct. at 2315. And the ruling here concerned factual decisions on alleged incompetence and willful neglect of duty—issues which were both hotly contested and of critical effect on the liberty and property interests of the plaintiff.[11]

We are mindful of the reference in the trial court's opinion to the testimony by each defendant that they voted to dismiss plaintiff based on the evidence presented at the hearing, and that the plaintiff had failed to establish that he was denied procedural due process. While the defendants testified that they required proof at the hearing and decided on the basis of the proof, the evidence is uncontradicted on the making of several public statements by defendant Mayes for the removal of plaintiff, and of unfavorable discussions by Moore and Wade as well. We are convinced that these established circumstances left no room for a determination that there was a decision by a fair tribunal, with the appear-

---

11. We have noted the statement in the trial court's memorandum opinion that the record of the board hearing reveals evidence of shortcomings of the plaintiff which could amount to a willful neglect of duty and incompetence in the judgment and discretion of the board.

Due to the infirmity we find in the board's decision in the case, we need not decide whether the record supports the board action. It suffices to note that the record shows no admitted set of facts concerning plaintiff as were present in *Hortonville.* The proof presented serious fact problems.

ance of fairness, in view of the totality of these circumstances. *Cinderella Career and Finishing Schools, Inc. v. F.T.C.,* 138 U.S. App.D.C. 152, 425 F.2d 583, 590–92 (due process not afforded in view of a prior public statement by *one* commission member); [12] see *In Re Murchison,* 349 U.S. 133, 139, 75 S.Ct. 623, 99 L.Ed. 942; *Texaco, Inc. v. F.T.C.,* 118 U.S.App.D.C. 366, 336 F.2d 754, 759–60; *Perlman v. Shasta Joint Junior College District Board of Trustees,* 9 Cal.App.3d 873, 88 Cal.Rptr. 563, 570 (3d Dist.); and see *Goldberg v. Kelly,* 397 U.S. 254, 271, 90 S.Ct. 1011, 25 L.Ed.2d 287. On the record as a whole we are left with the firm conviction that this board decision cannot stand and that a mistake was made in the ruling denying the due process claim. *Zenith Corp. v. Hazeltine,* 395 U.S. 100, 123, 89 S.Ct. 1562, 23 L.Ed.2d 129.

■ We do not say that such statements in an election campaign or between members were unlawful or improper. However, a due process principle is bent too far when such persons are then called on to sit as fact finders and to make a decision affecting the property interests and liberty interests of one's reputation and standing in his profession. See *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548. When the constitutional guarantee of an impartial and fair hearing is invoked at that stage, the due process considerations must prevail. See *In Re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942.

We are also mindful of the fact that disqualification or an alternate tribunal were not provided for at the time of the board hearing. We realize that both the board and the trial court faced this problem. There was also the rule of necessity to consider, a rule applied in some circumstances to permit tribunals to proceed, despite disqualification problems. See *Brinkley v. Hassig,* supra, 83 F.2d at 357. How-

ever, the Oklahoma legislature has now provided appeal remedies after a board decision, with a full hearing and review on the facts by the Professional Practices Commission and further appeal to the State Board of Education. See 70 O.S.Supp.1975, § 6–103. Thus means are now available for an equitable solution protecting the right to a fair hearing.

After our disposition which will require setting aside the prior board decision, if the board should determine that it should proceed with removal procedures against the plaintiff, and a new removal decision is entered, the appeal remedies can be used for a full review on the facts and a decision by other tribunals, if a challenge is made to the fairness of the tribunal and the new decision. Cf. *Gonzales v. Automatic Employees Credit Union,* 419 U.S. 90, 101, 95 S.Ct. 289, 42 L.Ed.2d 249; *Wilson v. City of Port Lavaca,* 391 U.S. 352, 88 S.Ct. 1502, 20 L.Ed.2d 636. We feel this disposition proper and necessary to respect the constitutional guarantee of a fair hearing.

*Conclusion and disposition*

■ Only one issue requires further discussion. This is the claim by plaintiff that the failure of the board to make findings after the hearing amounted to a denial of due process (Brief of Appellant, 30). While the issue was not urged in the trial court, it may be of importance in further proceedings and it has due process implications justifying our consideration on the merits. *Gomes v. Williams,* 420 F.2d 1364, 1367 (10th Cir.).

■ After the hearing, the board's decision was resolved by a minute that merely noted plaintiff's removal on motion by defendant Mayes, with defendants Mayes, Wade and Moore voting for removal. (Plaintiff's Ex. 4). Assuming that such action did imply a finding that the removal

12. There was undisputed proof of earlier statements by three Board members that Dr. Staton should be removed. In addition to that of defendant Mayes and his reference to earlier public statements by defendants Moore and Wade (see Appendix), there was proof of such statements during campaigns by defendants Moore

and Wade in the record of the Board hearing by testimony of a former Board member. (See Hearing Transcript, p. 342, which was made plaintiff's Ex. 17, and defendants' Ex. 1). The proof of these statements by the three Board members was not disputed.

was based on the general charges of incompetence and willful neglect of duty in the notice of the proposed removal, such conclusory terms were not sufficient to sustain the action under due process principles. While there need be no full opinion or even formal findings of fact and conclusions of law, the decision maker should state the reasons for the determination and the evidentiary basis relied on. See *Goldberg v. Kelly*, 397 U.S. 254, 271, 90 S.Ct. 1011, 25 L.Ed.2d 287; *Kinsella v. Board of Education*, 378 F.Supp. 54, 60 (W.D.N.Y.). Such rudimentary statements of reasons are a safeguard against a decision on ex parte evidence. We must agree that those fundamental elements were lacking here, and this has compounded the difficulty of the case. A statement of reasons and a fair indication of the evidentiary basis relied on should be given in such a decision.

For reasons stated earlier, under Fourteenth Amendment due process principles we must hold that the adverse determination on the charges against Dr. Staton is invalid. Accordingly, we vacate the judgment of the trial court and remand with directions that the former determination on the charges be declared invalid and that it should be expunged.

The Board of the defendant District may then consider, if it wishes, making a new finding on the charges to determine whether the earlier removal on them was proper. If a new decision on the charges is entered by the Board and challenges to it are made, disposition by the trial court will be withheld to permit completion of any State appeal or review proceedings. On conclusion of such proceedings, the trial court may then consider whether further equitable or compensatory relief may be proper.[13]

## APPENDIX

Plaintiff's exhibit 12 is a copy of a campaign statement of defendant Mayes appearing in a Muskogee newspaper on January 22, 1973. In pertinent part the statement read:

MIKE MOORE and MOODY WADE: The only members of the present school board with children in school have stated publicly that no progress can be made with our school problems until we get a new superintendent.

JIM MAYES: The candidate with a child in school, is pledged to seek a new top level administration for our schools. With 2 members of a 5 member board who already feel the same way, a new superintendent is now possible.

Plaintiff's exhibit 13 is a campaign statement of defendant Mayes appearing in a Muskogee newspaper on January 17, 1973, which stated in part:

The only thing you as a Muskogee citizen can do now is to vote for the one candidate for the board of education who pledges to get a sound curriculum for the students and teachers, and to get rid of an unsound administration for Muskogee.

Plaintiff's exhibit 14 was a campaign statement of defendant Mayes appearing on January 23, 1973 in a Muskogee newspaper, which stated in part:

FROM DISCUSSIONS WITH PARENTS, TEACHERS, AND CONCERNED CITIZENS DURING THE COURSE OF THE CAMPAIGN IT HAS BECOME APPARENT TO ME THAT THE TROUBLE WITHIN THE MUSKOGEE SCHOOL SYSTEM LIES WITH THE PRESENT SUPERINTENDENT AND THAT PROGRESS FOR EDUCATION IS IMPOSSIBLE UNLESS A CHANGE IS MADE. IF ELECTED I WILL VOTE TO MAKE THE NECESSARY CHANGE.
SIGNED
JAMES K. MAYES, JR.

BARRETT, Circuit Judge, dissenting:

I respectfully dissent.

---

**13.** We have noted that the contracts between the board and the plaintiff have expired and hence a reinstatement order would be inappropriate. After any further hearings which may be held by the administrative boards to determine whether the earlier ruling against the plaintiff was proper, the trial court may consider whether any other relief is appropriate.

The majority opinion recognizes that at the time the hearing was held before the five member school board, Oklahoma law had no provision for a dismissal proceeding before any other body or tribunal. In *Brinkley v. Hassig*, 83 F.2d 351 (10th Cir. 1936) we recognized and adopted the so-called "rule of necessity." We there said:

> . . . *some of the board [members] had expressed such prejudice, and doubtless all were in fact prejudiced.* . . .
> From the very necessity of the case has grown the rule that disqualification will not be permitted to destroy the only tribunal with power in the premises. . .
> Findings of administrative tribunals . . . cannot be overturned . . . *as long as it [the result] is reached from a consideration of substantial evidence produced at the hearing.* . . . (Emphasis supplied.)

83 F.2d, at pp. 356–358.

I would apply the rule laid down in *Brinkley* in the case before us. We noted in *Brinkley* that such administrative tribunals as the FTC, the ICC and state Public Service Commissions investigate, file complaints, conduct the hearings on charges preferred and decide the ultimate issues in controversy. We did not find prejudice *per se* which, in my judgment, is the effect of the majority opinion in this case. Such prejudice and bias has been determined notwithstanding that the three challenged board members, Mayes, Moore and Wade, testified before the district court that their public statements and campaign material critical of Superintendent Staton aimed at his removal from the school system *did not* prejudice them in the decisional process at or following the hearing. Furthermore, the district court found a lack of prejudice following an evidentiary hearing.

The "rule of necessity" has been invoked in many cases similar to that presented here. These cases stand for the proposition the the type of bias or prejudice attributed to the three board members in this case is not such as to disqualify them from hearing the matter. *See: Evans v. Gore*, 253 U.S. 245, 40 S.Ct. 550, 64 L.Ed. 887 (1920) where the validity of taxing income of judges was heard in that there was no other appellate tribunal available; *Federal Trade Commission v. Cement Institute*, 333 U.S. 683, 68 S.Ct. 793, 92 L.Ed. 1010 (1948); *Loughran v. Federal Trade Commission*, 143 F.2d 431 (8th Cir. 1944); *State ex rel. Burns v. City of Livingston*, 144 Mont. 248, 395 P.2d 971 (1964).

The majority opinion cites to the recent *Hortonville* decision rendered by the Supreme Court. Significantly, the Court, in reversing, while not directly discussing the Wisconsin Supreme Court's decision to "fashion" a remedy involving alleged bias and prejudice on the part of school board members in a hearing involving dismissal of teachers, nevertheless did not lend any comfort or support to the Court's order that any teacher dissatisfied with the board's decision could obtain a *de novo* hearing before a county court on *all issues*. The Supreme Court impliedly rebuked the Wisconsin court for "fashioning" the remedy referred to by stating (a) that a decision-maker is not disqualified because he has taken a position on a policy issue related to the dispute (and, I submit, the manner of performance by a school superintendent does involve a policy issue insofar as board members are concerned) and (b) that state law vests the government or policy-making function exclusively in the school board; the federal courts must guard against altering the statutory powers of a state created board as a matter of federal due process.

I readily agree that 70 O.S.A. § 6–103, prior to the 1975 amendments, under which the board proceeded in the instant case, lacked both procedural and substantive due process. Even so, in each case we must look to the record in order to ascertain whether, *in fact*, the complaining party has been provided a fair and adequate notice of charges, a proper opportunity to be heard, to confront witnesses, appear with counsel and—most significantly—whether the board rendered adequate findings of fact (or adequately stated reasons) for its ultimate decision from which state courts could, upon appeal and review, determine

whether the board's *decision* is based on substantial evidence and is not arbitrary, capricious or unreasonable. This, to me, should be the *sole* concern of the courts. If the respective state legislative bodies determine, as Oklahoma has, to provide substantially more right of review, *de novo* or otherwise, that is a determination reserved to the states.

My cursory review of applicable statutes in the states of our Circuit indicates that those of Colorado (C.R.S.1973, Art. 63, § 22–63–117), Kansas (K.S.A., 1974 Supp., §§ 72–5436 through 72–5445, L.1974 Ch. 301) and Utah (Utah Code Anno.1953, 1975 Supp., Vol. 5B, §§ 53–51–1 through 53–51–9) likely "pass muster" when measured against the due process commands of the majority opinion in the instant case. However, the same does not appear true for the States of New Mexico and Wyoming. Both statutory arrangements (N.M.S.1953, Anno., 1975 Supp., §§ 77–8–12 through 77–8–17; Wyoming Statutes, 1957, 1975 Cum.Supp., Vol. 6, §§ 21.1–151 through 21.1–164) provide for hearings before the school board, with procedural and substantive due process requirements equal to those prescribed under the model Administrative Procedure Act, with full review accorded. The Supreme Courts of both states have held that there is no deprivation of due process, *per se*, resulting from dismissal proceedings ·conducted by the very board which through one or more of its members or an agent has (a) given notice of the determination to dismiss before the hearing and (b) submitted a statement of "cause" if a hearing should be requested by the teacher, and thereafter heard and decided the issues presented. Upon a required complete record of the proceedings, the appellate courts examine to determine whether there is substantial evidence in support of the board's findings and conclusions. If the courts determine that the board acted arbitrarily, capriciously or unreasonably, the decision is set aside. *See: Monahan v. Board of Trustees, etc., County of Fremont,* 486 P.2d 235 (Wyo. 1971); *Wickersham v. New Mexico State Board of Education,* 81 N.M. 188, 464 P.2d 918 (1970).

In my view the procedure above related provides adequate due process guarantees. Regardless of any pre-hearing bias or prejudice such as that attributed to Mayes, Wade and Moore, the reviewing courts must examine the complete record of the administrative proceedings and determine (a) whether procedural due process was accorded and (b) whether the dismissal was justified *on the merits based on substantial evidence.* Given the above related due process protections which I believe any person occupying a position such as that of Superintendent Staton is entitled, I would not hesitate to follow and apply the rule we laid down in *Brinkley, supra.*