Francis E. VELHARTICKY, Plaintiff,

v.

INDEPENDENT SCHOOL DISTRICT NO. 3 OF ROGER MILLS COUNTY, OKLA-HOMA, also Known as Leedey Public Schools; John Britton; Gary Dodson; James Smith; and Joe West, Defendants.

No. CIV–92–287–L.

United States District Court, W.D. Oklahoma.

May 17, 1993.

**942**

Richard M. Klinge, Christopher A. Wood, Klinge & Wood, Oklahoma City, OK, for plaintiff.

Eric J. Groves, Groves & Tague, William P. Bleakley, Linda M. Meoli, Oklahoma City, OK, for defendants.

### ORDER

LEONARD, District Judge.

This matter comes before the Court on Motions For Summary Judgment by the Defendants Independent School District No. 3 of Roger Mills County, Oklahoma, also known as Leedey Public Schools (School District), John Britton, Gary Dodson, James Smith, and Joe West (Britton, Dodson, Smith and West are sometimes referred to collectively as the "individual Defendants"). The Plaintiff also moves this Court in a cross motion For Partial Summary Judgment.

In this case, Plaintiff was the superintendent of the school district in question. Based on certain complaints, the Defendants terminated the employment of Plaintiff. Plaintiff seeks damages from Defendants, alleging Defendants violated his civil rights by denying him due process because the tribunal which heard evidence on his termination was biased.

In their motions for summary judgment, Defendants argue that there is not sufficient evidence of a triable fact to go to the jury. Put another way, Defendants assert that the factual allegations do not present an unacceptable risk of unfairness sufficient to go to the jury. The individual Defendants argue additionally that qualified immunity should be granted because the contours of their conduct were such that a reasonable person would not have known that they were violating the law.

Plaintiff argues that the allegations indicate bias as a matter of law, precluding qualified immunity, and seeks summary judgment on those issues.

Upon review of all the briefs and evidence before this Court, the Court grants summary judgment in favor of all Defendants and, additionally, grants qualified immunity for all the individual Defendants. In so ruling, the Court denies Plaintiff's Motion For Partial Summary Judgment.

### FACTUAL BACKGROUND

1. Plaintiff was employed as a superintendent of Defendant School District under a series of annual written contracts beginning July 1, 1986, and ending June 24, 1991.

2. On January 7, 1991, the Board of Education of Defendant School District voted to rehire Plaintiff for the 1991–92 school year, which contract was to commence on July 1, 1991. At the time of the vote on January 7,

1991, Plaintiff was employed under a contract of employment which was to expire on June 30, 1991. On May 16, 1991, the Board of Education voted that there may be reasons to dismiss Plaintiff and offered Plaintiff the opportunity to request a hearing to challenge such action.

3. Defendants Smith, Dodson, Britton and West were members of the Board at all times material to this action. All individual Defendants visited a certain Ms. McDougale after her letter of resignation was received. Apparently, Ms. McDougale complained to the individual Defendants that Plaintiff used abusive language, required her to do his personal work, and accused Barbara Patton, an employee of the school district, of sabotaging a computer. The individual Defendants also received complaints from other employees of the school district, including a Mr. Lauder, the principal of the school.

4. On June 24, 1991, the hearing was held at which the Board of Education sat as the hearing tribunal. The school district was represented by legal counsel, Plaintiff was represented by legal counsel, and the Board of Education retained legal counsel to advise it on legal issues that might arise at the hearing.

5. At the conclusion of the hearing, the Board voted to adopt findings of fact and voted to dismiss Plaintiff based on the findings of fact.

6. James Smith was the president of the Board of Education and presiding officer of the hearing tribunal at the time of the hearing. There was no evidence that Smith had a history of personal animosity toward the Plaintiff. There was no evidence that Smith was the target of personal abuse or criticism from the Plaintiff. There was no evidence that Smith had a financial or personal stake in the outcome of the decision.

7. Prior to the hearing, Defendant Smith suggested to Plaintiff that it might be best for Plaintiff to resign because the Board of Education might be against him since Mr. Hahn, a former member of the Board of Education, had resigned.

8. Defendant Gary Dodson was the vice-president of the Board of Education at the time of the hearing. There was no evidence that Dodson had a history of personal animosity toward Plaintiff. There was no evidence that Dodson was the target of personal abuse or criticism from Plaintiff. There was no evidence that Dodson had a financial or personal stake in the outcome of the decision. Ms. McDougale, whose complaint to the board appears to be central in the termination of Plaintiff's employment, is related to Defendant Dodson in the following manner: Mr. Dodson's father-in-law married Ms. McDougale's daughter's mother-in-law.

9. Defendant West was a member of the Board of Education at the time of the hearing. There is no evidence that Defendant West had a history of personal animosity toward Plaintiff. There was no evidence that Defendant West was a target of personal abuse or criticism from Plaintiff. There was no evidence that West had a financial or personal stake in the outcome of the decision. There was evidence, however, that West became angry toward Plaintiff during an incident when Mr. Hahn was a member of the Board of Education. There was further evidence that after such showing of anger Defendant West voted to renew Plaintiff's contract on January 7, 1991.

10. Defendant Britton was a member of the Board of Education at the time of the hearing. There was no evidence of a history of personal animosity between Defendant Britton and Plaintiff. There was no evidence that Defendant Britton was a target of personal abuse or criticism by the Plaintiff. There was no evidence that Britton had a financial or personal stake in the outcome of the decision.

11. There was evidence that Defendants Smith, Dodson, West and Britton were the final decisionmakers relating to the termination of employment of Plaintiff.

12. There was evidence that the Board of Education's general complaint policy required that a complaint first be discussed with the person or persons against whom the complaint was registered, with the object of resolving the matter informally. There was no evidence that the individual Defendants first discussed the complaints against Plain-

tiff with the object of resolving the matter informally.

## SUMMARY JUDGMENT

Facts presented to the Court upon a Motion For Summary Judgment must be construed in a light most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993–995, 8 L.Ed.2d 176 (1962). If there can be but one reasonable conclusion as to the material facts, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Only genuine disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Id.* at 248, 106 S.Ct. at 2510. In the case at bar, upon review of the facts and governing law, the Court finds no triable issue of fact and further finds that summary judgment is appropriate.

## GOVERNING LAW

After reviewing the case law regarding whether tribunals are biased, the Court makes the following two observations: 1) the board members are entitled to a presumption of honesty and integrity in their decisionmaking powers, and 2) the United States Supreme Court tends to leave these decisions in the hands of the bodies elected to make these decisions unless, in the totality of circumstances, there is an unconstitutionally intolerable risk of bias.

In *Hortonville Joint School District v. Hortonville Ed. Assn.,* 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976), the United States Supreme Court reversed the Supreme Court of Wisconsin and held on the facts of that case that the actions of the members of the Board of Education did not represent an unconstitutionally high risk of bias.

The facts of that case are noteworthy. The teachers conducted a strike which was provoked by the Board of Education's failure to meet the teachers' demands. This same board, which participated in collective-bargaining negotiations with the teachers and failed to reach an agreement, conducted disciplinary hearings and voted to terminate the employment of the striking teachers. *Id.* at 484–485, 96 S.Ct. at 2310.

The Wisconsin Supreme Court held that the board was not sufficiently impartial to make the decisions because the background giving rise to the ultimate facts in the case revealed a situation which was not conducive to the detachment and impartiality on the part of the school board. *Id.* at 486, 96 S.Ct. at 2311. The United States Supreme Court disagreed and reversed, holding that the events preceding the board's decision, in light of the important interest in leaving the board the power given by the state legislature, was "not enough to overcome the presumption of honesty and integrity in policymakers with decisionmaking power." *Id.* at 497, 96 S.Ct. at 2316.

In the *Hortonville* case, the United States Supreme Court further found that the correct focus on whether a tribunal is biased is to determine whether the board members had some personal or financial stake in the decision that might create a conflict of interest. *Id.* at 491–492, 96 S.Ct. at 2314. The *Hortonville* Court noted that there was nothing in the record to support charges of personal animosity, and there was nothing to suggest that the board members were anything but dedicated public servants, trying to provide the district with quality education. *Id.* at 492, 96 S.Ct. at 2314.

In *Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), the United States Supreme Court held that the combination of investigative and adjudicative functions does not, without more, constitute a due process violation (i.e. does not create an unconstitutional risk of bias). *Id.* at 47 and 58, 95 S.Ct. at 1464 and 1470. Without a showing to the contrary, state administrators are assumed to be persons of conscience and intellectual discipline, capable of judging a particular controversy fairly and on the basis of its own circumstances. *Id.* at 55, 95 S.Ct. at 1468. The Supreme Court said that a court must determine from the facts and circumstances of the case before it whether a risk of unfairness is intolerably high. *Id.* at 58, 95 S.Ct. at 1470.

In *Staton v. Mayes,* 552 F.2d 908 (10th Cir.1977), the Tenth Circuit in a case involving the dismissal of a superintendent by the school board members found that the circumstances "left no room for a determination that there was a decision by a fair tribunal, with the appearance of fairness, in view of the totality of the circumstances." *Id.* at 914–915. In that case, the Defendant Mayes campaigned for election to the board, premising his campaign on the promise to replace the Plaintiff superintendent. In newspaper advertisements, Mayes stated that he pledged to seek new top-level administration for the schools and that two other Defendant board members had publicly stated there could be no progress with the present superintendent. *Id.* at 913.

The Tenth Circuit in that case stated that: "The firm public statements before the hearing by defendant Mayes for the removal of Dr. Staton, and the discussions by defendants Moore and Wade as admitted, reveal a tribunal not meeting the demands of due process for a hearing with fairness and the appearance of fairness." *Id.* at 914.

In *Hicks v. City of Watonga,* 942 F.2d 737 (10th Cir.1991), the Tenth Circuit Court found a genuine issue of fact as to whether one of the members of a tribunal was biased because the tribunal member was the target of personal criticism by the Plaintiff arising out of a traffic ticket incident. *Id.* at 751. However, the Tenth Circuit found that the other members of the tribunal were entitled to qualify immunity because there was no clear law which forbade one member from participating in a tribunal where another member is biased. *Id.* at 750.

In *Mangels v. Pena,* 789 F.2d 836 (10th Cir.1986), the Tenth Circuit stated: "Because honesty and integrity are presumed on the part of a tribunal, [citation omitted] there must be some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated[.]" *Id.* at 838.

## FACTS APPLIED TO GOVERNING LAW

The facts in this case indicate that the board members participated in a certain degree of investigation, receiving complaints and conducting fact-finding of the matters prior to the hearing. A showing that the Board of Education was involved in the events preceding the hearing is not enough by itself to overcome the presumption of honesty and integrity. *See Hortonville Joint School District v. Hortonville Educ. Assn., supra,* 426 U.S. at 497, 96 S.Ct. at 2316. Put another way, the combination of investigative and adjudicative functions alone does not disqualify a board from conducting a hearing. *Withrow v. Larkin, supra,* 421 U.S. at 58, 95 S.Ct. at 1470.

The Court must also review the facts to determine whether some personal or financial stake by the members of the board creates a conflict of interest and an intolerable risk of bias.

The Court reviewed the evidence regarding Defendant Britton and observes that there are no specific facts, other than participation in the events preceding the hearing, to show personal animosity. Nor are there any facts indicating that defendant Britton was the target of abuse or criticism by the Plaintiff. In order to disqualify Defendant Britton, this Court would have to indulge in a presumption against him based purely on his vote. This is unacceptable. *See Hicks v. City of Watonga, supra,* at 748.

Regarding Defendant Smith, Plaintiff argues that Smith suggested that Plaintiff resign because after Mr. Hahn resigned on May 16, 1991, the board might vote against him. Upon reviewing the evidence regarding this allegation, the Court does not find an unconstitutionally intolerable risk of bias. Rather the Court views this matter in the context of a controversy between the board and Plaintiff in which Defendant Smith suggested it might be best for him to resign. The facts do not suggest that Defendant Smith meant that he knew that the tribunal would vote against Plaintiff. In deposition, when asked what position was taken by Mr. Wilson (the person replacing Mr. Hahn on the Board of Education), Defendant Smith said he did not know and had never talked to Mr. Wilson about it prior to the meeting. Plaintiff's Joint Exhibit Book, Exhibit 28 at page 101. In fact, when asked what the

attitude of Defendant Britton, Dodson and West were towards the Plaintiff, Defendant Smith stated that he did not know prior to the meeting. *Id.* at page 100. When asked what his attitude was toward the Plaintiff, Mr. Smith responded "I liked him." *Id.* at page 100.

Regarding Defendant West, Plaintiff argues that evidence by Mr. Hahn who said that Defendant West was angry at Plaintiff indicated bias. Review of the evidence regarding this matter does not indicate an unconstitutionally high risk of bias. The deposition of Tommy Hahn stated that in approximately 1989 or 1990 Defendant West and others came to Hahn's house and wanted to get rid of the plaintiff at that time. Plaintiff's Joint Exhibit Book, Exhibit No. 24 at page 65. It was indicated that Defendant West at times during that meeting became angry regarding the Plaintiff. *Id.* at page 69. Regarding the evidence of getting rid of the Plaintiff, Mr. Hahn was asked:

Q. "In that meeting, did Mr. West ever make the statement to you that he wanted to get rid of Dr. V?"

A. "I don't recall him saying that specifically."

*Id.* at lines 15–17, page 82. Finally, evidence indicated that subsequent to this meeting at Mr. Hahn's house, Defendant West voted for renewal of Plaintiff's contract. *Id.* at pages 82 and 83.[1]

Reviewing this evidence against Mr. West in a light most favorable to the non-movant, Mr. West appears to be nothing more than a dedicated public servant concerned with the issues for which he was elected. Although capable of being angry at one point, Defendant West, upon change of conditions or perhaps reflection, was able subsequently to vote to renew the contract of Plaintiff. Nothing in this evidence rebuts the presumption of honesty and integrity of the Defendant West.

Regarding Defendant Dodson, Plaintiff argues that his relationship to the complainant Ms. McDougale creates an inherent bias.

Upon review of the evidence in this matter, the Court does not find an unconstitutionally high risk of bias in the relationship so described. In Plaintiff's deposition, Plaintiff stated:

Q. "How is Talva McDougale related to Gary Dodson, if you know?"

A. "You'll have to listen very carefully, because this is complicated."

Q. "I'm glad someone is taking it down then."

A. "Gary Dodson's father-in-law—in other words, his wife's father—was married to Talva McDougale's daughter's husband's mother."

Mr. Kling: "Counsel, I want you to tell me what degree that is?"

Ms. Meoli: "I think that's the nineteenth."

The Witness: "Well, we all understand that it is a long ways down the list and it—"

Mr. Kling: "Just answer her questions."

Plaintiff's Deposition, lines 19–25, page 29 and lines 1–7, page 30; Exhibit L attached to Brief in Support of Motion For Summary Judgment of Defendant [School] District.

■ Given no more evidence regarding this matter, the Court does not find that this rebuts the presumption of honesty and integrity of the board member. If a relationship involved a spouse, child or parent, this Court might find an inherently high risk of bias sufficient to rebut the presumption of honesty and integrity on the fact of the relationship itself without additional evidence. However, the Court would require specific evidence to show the degree of personal involvement in the relationship to rebut the presumption of honesty and integrity in a case involving a relative who is not part of the nuclear family.

■ The Court also considers Plaintiff's assertion that the Board of Education's general complaint policy was not followed. According to the policy, Plaintiff asserts that a complaint must first be discussed with the person against whom the complaint was reg-

---

1. Evidence indicated that all the members of the Board of Education voted in favor of renewal of Plaintiff's contract in January 1991.

istered with the object of resolving the matter informally.

Upon review of the general complaint policy, the Court finds that the policy clearly and plainly regards complaints from the public and does not address the issue of complaints from the employees within the school district. The first sentence of the general complaint policy states: "The Leedey Board of Education recognizes their responsibility to hear and consider *complaints from the public* whom they have been elected to represent." (Emphasis added.) General Complaint Policy, Plaintiff's Joint Exhibit Book, Exhibit No. 18. There is no evidence that the school board by custom and tradition entertained informal resolutions of employee problems. The Board's failure to implement this general complaint policy regarding complaints from the public in no way rebuts the presumption of honesty and integrity of the members of the school board. In fact, the Court finds the general complaint policy is not applicable to the case at bar.

Accordingly, in a light most favorable to the nonmovant, taking all reasonable inferences from the allegations and facts of this matter, and applying the governing law, the Court finds no triable issue. The Court further finds that the presumption of honesty and integrity has not been rebutted as a matter of law. Therefore, the Court grants summary judgment in favor of all Defendants and against Plaintiff.[2]

### QUALIFIED IMMUNITY

■ Qualified immunity is available to government officials unless they violate clearly established statutory or constitutional rights that a reasonable person would have known. In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the United States Supreme Court enunciated the following standard: "We therefore hold that government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738.

A court's inquiry into the clearly established rights does not begin and end at a general level of inquiry. In *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the United States Supreme Court clarified the *Harlow* standard by requiring a particularized inquiry into the "contours" of the right allegedly violated. *Id.* at 640, 107 S.Ct. at 3039. By way of example, the *Anderson* Court stated: "For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of 'clearly established law' were to be applied at this level of generality, it would bear no relationship to the 'objective legal reasonableness' that is the touchstone of *Harlow*. Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* at 639, 107 S.Ct. at 3039. The *Anderson* court further stated: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640, 107 S.Ct. at 3039.

■ In applying the facts of this case to the governing law, the Court finds that the four individual Defendants are entitled to qualified immunity. The issue is not the general inquiry of whether a biased tribunal violates a clearly established right, but whether the acts taken by these individual

---

2. Plaintiff argued strenuously that *Staton v. Mayes, supra,* was dispositive of these matters. However, this Court finds qualitative and quantitative differences in the facts of this case and *Staton.* In *Staton,* Defendant would have to break a campaign promise in order to listen objectively to the evidence. In the case at bar, it appears that all the Defendants had previously voted in favor of renewal of Plaintiff's contract but later, upon a letter of resignation from an employee and complaints therefrom, determined that Plaintiff should be terminated from employment.

Defendants constitute an unconstitutionally high risk of bias, such that a reasonable board member would have known he was violating Plaintiff's rights. This Court answers that question in the negative.

Clearly, the board members receipt of complaints and other investigative activities does not violate a clearly established law. In fact, the United States Supreme Court stated that the combination of investigative and adjudicative functions of a tribunal does not, without more, violate due process. *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975).

As discussed above, Mr. Smith's suggestion that the superintendent might resign does not in the context of a controversy violate a clearly established law. Nor does Mr. West's becoming angry toward Plaintiff at one point, but later voting for renewal of Plaintiff's contract, and then sitting on a tribunal violate a clearly established law. Finally, Mr. Dodson's distant relationship to the complainant who precipitated the termination of Plaintiff, without more, does not violate a clearly established law.

Therefore, in addition to granting summary judgment, the Court finds that qualified immunity is available to the four individual Defendants.

### STATE CLAIMS

In light of the Court's ruling above, granting summary judgment in favor of Defendants on the federal claims, the Court declines to exercise pendent jurisdiction on the state claims against the Defendants. *See Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

### CONCLUSION

For the foregoing reasons, the Court GRANTS summary judgment in favor of all Defendants and, additionally, further GRANTS qualified immunity to the four individual Defendants. The Court DECLINES to exercise pendent jurisdiction on the state claims against Defendants. In so ruling, the Court DENIES Plaintiff's Motion For Partial Summary Judgment against the Defendants.

It is so ordered.