Gerard R. KRASZEWSKI, individually, and as surviving spouse of Mary A. Kraszewski, deceased, Appellant,

v.

BAPTIST MEDICAL CENTER OF OKLA-HOMA, INC.; William Gregory Morgan III, M.D.; David W. Vanhooser, M.D.; and, Herbert L. Meites, M.D., Defendants,

v.

Robert Vester PAGE, Defendant/Appellee,

v.

HARTFORD UNDERWRITERS INSUR-ANCE COMPANY, a Connecticut corporation, Intervenor/Appellee.

No. 83638.

Supreme Court of Oklahoma.

March 26, 1996.

John B. Norman, Thomas A. Wallace, L. Mark Bonner, Oklahoma City, for Appellant, Gerard R. Kraszewski.

Peter L. Wheeler, Oklahoma City, for Appellee, Robert Vester Page.

Earl R. Donaldson, Oklahoma City, for Appellee/Intervenor, Hartford Underwriters Insurance Company.

KAUGER, Vice Chief Justice:

The novel issue presented is: whether the appellant may recover damages

for intentional infliction of emotional distress[1] arising from seeing his wife fatally injured.[2] We find that because the appellant may be entitled to damages for his emotional distress because: 1) he was directly physically involved in the incident; 2) he was damaged from viewing the injury to his wife rather than from learning of the accident later; and 3) he was the spouse of the party whose injury gave rise to his anguish.[3] The

1. The husband also argues that he may recover for his emotional suffering under the theory of negligent infliction of emotional distress. We agree. However, unlike a cause of action for intentional infliction of emotional distress, negligent infliction of emotional distress is not an independent tort. *Long v. PKS, Inc.*, 12 Cal. App.4th 1293, 16 Cal.Rptr.2d 103, 105 (1993). Rather, before damages for mental suffering may be collected, the plaintiff must establish: a duty on the part of the defendant to protect the plaintiff from injury; a failure of the defendant to perform the duty; and an injury to the plaintiff resulting from the failure. *Burgess v. Superior Court*, see note 3, infra; E. Cunningham III, "Negligent Infliction of Emotional Distress in Air–Crash Losses: A New Flight Path," 70 Wash.U.L.Q. 935, 952 (1992); J. Davies, "Direct Actions for Emotional Harm: Is Compromise Possible?," 657 Wash.L.Rev. 1, 31 (1992). See *Grover v. Superior Welding, Inc.*, note 7, infra; *Wofford v. Eastern State Hosp.*, note 7, infra; *Woods v. Fruehauf Trailer Corp.*, note 7, infra. Here, the negligence was conceded. The husband should have been allowed to present evidence of his emotional distress to the jury. See discussion and accompanying footnotes, p. 247, infra.

2. On appeal, the driver and the insurer argued that to allow recovery for the husband's distress would result in a double recovery for mental pain and suffering. We find this argument unpersuasive. In *Binns v. Fredendall*, 32 Ohio St.3d 244, 513 N.E.2d 278, 281 (1987), the Ohio Supreme Court found that the fact that mental anguish over the death of a relative is compensable in a wrongful death action does not preclude a plaintiff's recovery of damages for the injury where the plaintiff also suffers physical injuries in the same accident which caused the death. The damages sought by the husband under the intentional infliction of emotional distress theory result not from the death of his wife, but rather his from having to watch his wife's injury and suffering up to the time of death. Recovery is predicated upon the husband's direct involvement in the accident and his viewing of his wife's suffering. *Binns v. Fredendall*, supra. In the wrongful death action, damages were sought for mental pain and suffering occurring not from the accident per se but from the resulting death of the wife.

Double recoveries are not permitted under the law. *Carris v. John R. Thomas & Assoc.*, 896 P.2d 522, 530 (Okla.1995); *Tate v. Browning–Ferris, Inc.*, 833 P.2d 1218, 1223 (Okla.1992). To prevent double recovery on remand here the

fact-finder must be made aware that the plaintiff's remaining claims for emotional distress are compensable only for the emotional distress he endures which has been or will be occasioned by the occurrence commencing with the onset of the event and ending just prior to the death of his wife. Plaintiff cannot recover again for his grief or emotional distress occasioned by his wife's death. Although neither the driver nor the insurer address the issue of double recovery on certiorari, we do so under the authority of *Hough v. Leonard*, 867 P.2d 438, 448–50 (Okla.1993).

3. *Pieters v. B–Right Trucking, Inc.*, 669 F.Supp. 1463, 1466 (N.D.Ind.1987) (Indiana's impact rule does not limit injured passenger's recovery for damages for emotional distress to those damages stemming from her own injuries, but would also permit recovery of emotional distress damages suffered as a result of witnessing death of fiance-driver.); *State of Maryland v. Bungie*, 173 F.Supp. 568, 572 (D.Md.1959) (Husband can recover in action for his own personal injuries damages resulting from shock as a result of the accident and from his fear for the safety of his wife and child as well as for his own safety.); *Burgess v. Superior Court*, 2 Cal.4th 1064, 9 Cal. Rptr.2d 615, 619–20, 831 P.2d 1197, 1201–03 (1992) (Mother was not a bystander for purposes of bringing a claim for compensation for negligently inflicted emotional distress against a doctor who entered into physician-patient relationship for her care during labor and delivery, which damages arose from injuries to child during course of the delivery.); *Keck v. Jackson*, 122 Ariz. 114, 593 P.2d 668, 670 (1979) (Damages for shock or mental anguish in witnessing injury to third person, occasioned by defendant's negligence, are recoverable where such shock or mental anguish is manifested by physical injury and results from witnessing injury to person with whom plaintiff has close personal relationship, either by consanguinity or otherwise.); *Bovsun v. Sanperi*, 61 N.Y.2d 219, 473 N.Y.S.2d 357, 461 N.E.2d 843, 848 (1984) (Two appeals presented the same question. In the first, a mother and daughter were allowed to recover for emotional distress from seeing a serious injury to the husband where the mother and daughter were both thrown about the station wagon by the force of the impact and were both instantly aware of the fact that the father had been seriously injured. In the second, a family was involved in a car accident. One of two children died from the injuries. The remaining family members, who were also injured in the accident, were allowed to recover for the emotional trauma of seeing the fatally injured child suffer.). See also, *Buck v. Greyhound Lines, Inc.*, 105 Nev. 756, 783 P.2d

cause is remanded for a jury determination on the issues of the extremeness of the appellee's conduct and the severity of the distress suffered by the appellant.[4]

## FACTS

On November 7, 1992, Robert Vester Page (appellee/Page/driver) spent the afternoon in a local bar where he became legally intoxicated. Rather than calling for a taxi or allowing someone else to drive, Page sat in his pickup in a parking lot near the entrance of a grocery store. As Gerard R. Kraszewski (appellant/Kraszewski/husband) and Mary, his wife of thirty-eight years, walked hand-in-hand through the Buy For Less parking lot, the driver accelerated, leaving twenty feet of skid marks on the parking lot surface and hitting the couple. The husband was struck in the shoulder, the chest, and the knee and knocked back from the truck. After the impact with the pickup split the couple, the wife became stuck under the rapidly accelerating vehicle. The husband recovered and pounded on the side of the truck begging the driver to stop while his wife was trapped under the vehicle and dragged sixty feet through the parking lot.[5] The driver stopped only when he was forced to do so by backed-up traffic. Arguably, he would have continued out of the parking lot had his path not been blocked. Once the driver backed off Mary's body, the husband held her and comforted her until the paramedics arrived. She died later that evening.

The driver was arrested at the scene of the accident and later charged with driving under the influence and manslaughter in the first degree. His blood alcohol content was .14% at the time of his arrest.[6] After pleading guilty to the charges, the driver was sentenced to thirty-eight years in prison, twenty-four of which were suspended.

The husband sued the driver for damages arising from the accident and for the wrongful death of his wife. Hartford Underwriters Insurance Company (Hartford/insurer) intervened. In addition to the claim for wrongful death, the husband sought compensation for reckless infliction of emotional distress arising from seeing his wife being fatally injured in the accident. The driver and the insurer filed motions for partial summary judgment arguing that because the husband was a bystander he could not recover damages for reckless infliction of emotional distress caused by the driver's negligence. The motion was sustained, and the cause was dismissed without prejudice. The husband refiled the action naming the driver, the hospital where his wife was treated, and the doctors charged with her care. Again, Hartford intervened, and the insurer and the driver filed motions for partial summary judgment. The husband argued again that

---

437, 443 (1989) in which the Nevada court indicated that regardless of whether the bystander rule was adopted in a jurisdiction, a party seriously injured in the same accident as one in which she experienced anxiety and distress over the suffering of her child would be allowed recovery for emotional injuries.

4. *Breeden v. League Serv. Corp.*, 575 P.2d 1374, 1377–78 (Okla.1978); Restatement Second of Torts § 46 (1977) and accompanying comments. See also, *Hadnot v. Shaw*, 826 P.2d 978, 985 (Okla.1992).

5. The transcript of proceedings provides in pertinent part at pp. 13 and 18, respectively:

"... I parked in this area here and Mary and I got out of the car. We walked this way, which is west. And we got to this point when we angled northwest. We were about eight to ten feet away from the truck. I took another step. Mary was to my left. I was holding her hand. And the truck lurched from a standing stop,

brushed me back, knocked me back. I pounded the truck as it went by knocking down Mary and dragged her more than 50 feet...."

"... We were about eight to ten feet away. I took another step, Mary and I took another step, and the truck lurched at us. In that step, my knee was struck, my right knee was struck, and I felt the impact of my chest and shoulder. And it continued faster and faster and I hit with my hands on the side of the truck. I yelled, stop, stop...."

6. Title 47 O.S.1991 § 11–902 provides in pertinent part:

"A. It is unlawful and punishable as provided in subsection C of this section for any person to drive, operate, or be in actual physical control of a motor vehicle within this state who: 1. Has a blood or breath alcohol concentration, as defined in Section 756 of this title, of ten-hundredths (0.10) or more at the time of a test of such person's blood or breath administered within two (2) hours after the arrest of such person ..."

he was entitled to damages for negligent infliction of emotional distress, and the trial court allowed him to amend his petition to add a claim for intentional infliction of emotional distress or the tort of outrage. However, the trial court, ruling that the facts would not support an award for either negligent or intentional infliction of emotional distress, sustained the motion for summary judgment. The wrongful death action against the driver, the hospital and doctors and Hartford was litigated and later settled. Only the husband's individual claim for damages associated with the viewing of his wife's injury and subsequent suffering was left for consideration on appeal. The Court of Appeals affirmed after finding that the husband could not recover for emotional distress arising from the injury to his wife. We granted certiorari on December 7, 1995, to determine whether the husband might recover for his mental injury for the intentional infliction of emotional distress.

## I.

BEFORE A PLAINTIFF, WHO IS INVOLVED IN AN ACCIDENT AND SUFFERS MENTAL SUFFERING FROM VIEWING AN INJURY TO ANOTHER, MAY ESTABLISH A CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, IT MUST BE SHOWN THAT: 1) THE PLAINTIFF WAS DIRECTLY PHYSICALLY INVOLVED IN THE INCIDENT; 2) THE PLAINTIFF WAS DAMAGED FROM ACTUALLY VIEWING THE INJURY TO ANOTHER RATHER THAN FROM LEARNING OF THE ACCIDENT LATER; AND 3) A FAMILIAL OR OTHER CLOSE PERSONAL RELATIONSHIP EXISTED BETWEEN THE PLAINTIFF AND THE PARTY WHOSE INJURY GAVE RISE TO THE PLAINTIFF'S MENTAL ANGUISH.

The husband argues that because he was struck by the driver's truck in the accident which led to his wife's death, he should be allowed to recover for the emotional injuries which he suffered as a result of witnessing the life-ending injuries to his wife. The driver and Hartford contend that the husband was a mere bystander, and that he cannot recover for mental distress arising from witnessing injuries to his wife.

■ To support an actionable claim for negligence, a plaintiff must establish the concurrent existence of: a duty on the part of the defendant to protect the plaintiff from injury; a failure of the defendant to perform that duty; and an injury to the plaintiff resulting from the failure of the defendant.[7] Oklahoma has never recognized an action for mental suffering caused by witnessing an injury to another. However, none of the cases in which we denied recovery involved circumstances in which the plaintiff was actually injured in the accident.[8] We recognized

---

7. *Grover v. Superior Welding, Inc.*, 893 P.2d 500, 502 (Okla.1995); *Wofford v. Eastern State Hosp.*, 795 P.2d 516, 518 (Okla.1990); *Woods v. Fruehauf Trailer Corp.*, 765 P.2d 770, 775 (Okla. 1988).

8. Instead, in *Ellington v. Coca–Cola Bottling Co. of Tulsa, Inc.*, 717 P.2d 109, 111 (Okla.1986), we found that mental pain and anguish were sufficiently connected with the physical suffering and injury inflicted upon a consumer who became ill after perceiving a foreign substance in her soft drink to allow recovery upon a proper showing of proof. The consumer, like the husband, was a "direct victim." See also, *Slaton v. Vansickle*, note 11, infra, and discussion of case pp. 246–247, *infra*; *Van Hoy v. Oklahoma Coca–Cola Bot-*

tling Co., 205 Okla. 135, 235 P.2d 948, 949 (1951) (Plaintiff who purchased bottled soft drink allegedly containing decomposed foreign substance and gave it to fellow employee who drank it could not recover damages for mental anxiety, anguish, embarrassment and mental and physical shock caused when the employee was made violently ill and was seized with pain, nausea, and other severe physical symptoms.); *McMeakin v. Roofing & Sheet Metal Supply Co. of Tulsa*, 807 P.2d 288, 290 (Okla.App.1990) cert. denied 3/19/91 (Homeowner, who suffered heart attack one month after witnessing house's collapse due to alleged negligence of roofing contractor, could not recover for negligent infliction of emotional distress, because the injury was not foreseeable.).

in *Slaton v. Vansickle*, 872 P.2d 929, 931 (Okla.1994) that a plaintiff may recover on a claim for physical injury if it is accompanied by mental stress or when metal distress is accompanied by physical injury **if the negligent act created a breach of duty to the party.**[9]

Mental anguish cases focus on the duty of care the defendant owes to a particular class of plaintiffs. There are two categories of parties in actions to collect for emotional distress—"bystander" and "direct victim" plaintiffs. Recovery is allowed based on whether a duty is imposed on the defendant to avoid inflicting emotional harm to the party.[10] Bystanders are those plaintiffs seeking damages for witnessing the injury of another. In bystander cases, there is no pre-existing relationship between the plaintiff and the defendant, and the defendant has not voluntarily assumed any responsibility relating to the bystander's welfare.[11] Bystander liability is premised upon the defendant's infliction of emotional distress on a party not directly involved in the accident but which causes mental suffering by the observer,[12] i.e. where the mental pain or suffering is caused from viewing acts which result in another's suffering rather than from the plaintiff's own personal physical involvement.

Direct victims are those plaintiffs which are involved directly in an accident but whose emotional damages are caused by the suffering of another. In the case of a direct victim, the defendant has assumed the duty to avoid causing the plaintiff severe emotional distress, the duty has been imposed by law, or it has arisen out of a relationship between the parties.[13] In direct victim cases, well-settled principles of negligence are invoked to determine whether all elements of a cause of action, including duty,[14] are present.[15]

■ The bystander theory is well illustrated by *Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 81, 441 P.2d 912, 921 (1968). In *Dillon*, a mother sued for emotional damages after witnessing the death of her child in a car accident. The California court recognized the general rule that a plaintiff may not recover for emotional distress absent a fear for one's own safety. However, the mother was allowed to recover because: 1) she was physically close to the scene of the accident; 2) her emotional distress arose from viewing the accident rather than learning of it later; and 3) there was a familial relationship with the victim.

We specifically rejected *Dillon* in *Slaton v. Vansickle*, 872 P.2d 929, 931 (Okla.1994). In *Vansickle*, the owner of a gun sued the firearm manufacturer for emotional damages arising after learning that a third party had been fatally shot with his rifle. Vansickle attempted to distinguish *Dillon* by arguing that, because he owned the gun, he was a participant. rather than a bystander. We found that the distinction had no legal signifi-

9. See, respectively, *Thompson v. Minnis*, 201 Okla. 154, 202 P.2d 981, 985 (1949) and *Ellington v. Coca Cola Bottling Co. of Tulsa*, 717 P.2d 109, 111 (Okla.1986).

10. *Consolidated Rail Corp. v. Gottshall*, — U.S. —, —, 114 S.Ct. 2396, 2405, 129 L.Ed.2d 427 (1994); *Burgess v. Superior Court*, see note 3, 9 Cal.Rptr.2d at 618, 831 P.2d at 1200, supra; Pearson, "Liability to Bystanders for Negligently Inflicted Emotional Harm—A Comment on the Nature of Arbitrary Rules, 34 U.Fla.L.Rev. 477, 489 (1982).

11. Id.; *Christensen v. Superior Court*, 54 Cal.3d 868, 2 Cal.Rptr.2d 79, 86, 820 P.2d 181, 188 (1991). See also, *Slaton v. Vansickle*, 872 P.2d 929, 931 (Okla.1994).

12. *Burgess v. Superior Court*, see note 3, supra; *Ellington v. Coca Cola Bottling Co. of Tulsa, Inc.*, see note 9, supra.

13. The duty is owed where the negligent act created a breach of duty as to the party. *Slaton v. Vansickle*, see note 11, supra. See also, *Burgess v. Superior Court*, see note 3, 9 Cal.Rptr.2d at 619, 831 P.2d at 1201, supra; *Christensen v. Superior Court*, see note 11, supra; *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.*, 48 Cal.3d 583, 257 Cal.Rptr. 98, 101, 770 P.2d 278, 281 (1989).

14. *Grover v. Superior Welding, Inc.*, see note 7, supra; *Wofford v. Eastern State Hosp.*, see note 7, supra; *Woods v. Fruehauf Trailer Corp.*, see note 7, supra.

15. *Burgess v. Superior Court*, see note 3, 9 Cal. Rptr.2d at 619, 831 P.2d at 1201, supra.

cance in a situation where the plaintiff would not have been injured but for the death of the third party. Vansickle's injuries did not arise immediately from the accident. Rather, he suffered emotional distress after being told his actions had contributed to the death of a young woman. We reiterated the rule that, to recover for emotional distress under Oklahoma law, a plaintiff must show that the injury results from a wrong to the party suing—the party must be a "direct victim" rather than a "bystander".

This cause is factually distinguishable from *Vansickle*. In *Vansickle*, the plaintiff was not involved directly in the accident. Here, although the husband is suing for emotional damages caused by seeing his wife fatally injured in the accident with the driver, **the husband was a direct victim—he was a part of the accident which caused his mental suffering.** The driver ran into the husband and his wife who were holding hands. When the couple's hands were torn asunder by the impact of the accident, the driver severed their thirty-eight year marriage. The husband was hit and knocked back from the truck and his wife was trapped under the vehicle and dragged sixty feet. Although the husband's physical injuries were minor, there is no question that he was exposed to fear and bodily harm by the driver's negligence.[16] The husband is a direct victim who was injured in the same accident which gave rise to his emotional suffering. Another factual distinction is that in *Vansickle*, the plaintiff

did not view the accidental shooting. The only injuries he suffered arose from learning of the incident after the fact. This husband not only saw his wife's injuries and her suffering, he was on the scene and directly involved in the impact which caused his alleged mental anguish. Finally, there was neither a close personal relationship nor a familial relationship between the plaintiff and the defendant in *Vansickle*. This husband of almost four decades directly witnessed an incident which eventuated in his wife's death.

The driver does not and cannot dispute that he owed a duty to the husband. Instead, he essentially argues that the breach of that duty will not support a cause of action for the husband's emotional injuries from seeing his wife's suffering. We do not agree. The driver breached his duty to the husband when he negligently struck and injured him with his truck. Courts which have considered similar facts—where a party is actually a direct victim of an accident and suffers mental injuries from the observation of injuries to a third party—allow recovery for the plaintiff's emotional injuries.[17] This position is adopted although those jurisdictions, like Oklahoma, have rejected the *Dillon* bystander approach.[18] Even though the actual injury may be slight in cases where the plaintiff is in risk of physical injury, the party's role is not that of a passive, shocked witness. Instead, when one is subjected to the same fear and danger which causes injury to the other

16. The only issue upon which the driver and the insurer sought summary judgment related to the husband's emotional injuries. Before trial, the driver and the insurer admitted liability for Kraszewski's injuries. The jury was instructed on the elements to consider in fixing the damages for the husband's personal injuries, including his past physical and mental pain and suffering. The jury found in favor of the husband, but it did not award him any money damages.

17. *Pieters v. B–Right Trucking, Inc.*, see note 3, supra; *State of Maryland v. Bungie*, see note 3, supra; *Burgess v. Superior Court*, see note 3, 9 Cal.Rptr.2d at 619–20, 831 P.2d at 1201–03, supra; *Binns v. Fredendall*, see note 2, supra (Recovery for negligently inflicted emotional and psychiatric injuries accompanied by contemporaneous physical injury may include damages for mental anguish, emotional distress, anxiety, grief or loss of enjoyment of life caused by the death

or injury of another.); *Keck v. Jackson*, see note 3, supra; *Bovsun v. Sanperi*, see note 3, supra; *Eyrich v. Dam*, 193 N.J.Super. 244, 473 A.2d 539, 545 (1984) (Once a plaintiff has been negligently placed within the area of physical risk and has actually sustained a physical impact, his cause of action for emotional distress is not limited to the psychological sequelae of fear for himself but rather comprehends all of the psychological sequelae which as a matter of reasonable foreseeability result from the episode as a whole.); Annot., "Right to Recover Damages in Negligence for Fear of Injury to Another, or Shock or Mental Anguish at Witnessing Such Injury," 29 A.L.R.3d 1337, 1379 (1970). See also, *Buck v. Greyhound Lines, Inc.*, note 3, supra.

18. *Bovsun v. Sanperi*, see note 3, 473 N.Y.S.2d at 360, 461 N.E.2d at 846, supra.

party,[19] the person is a participant and a victim, not a bystander.[20] Under these circumstances, recovery is allowed if, as here: 1) the plaintiff was directly physically involved in the incident; 2) the plaintiff was damaged from actually viewing the injury to another rather than from learning of the accident later; and 3) a familial or other close personal relationship existed between the plaintiff and the party whose injury gave rise to the plaintiff's mental anguish.[21]

## II.

### UNDER THE FACTS, REASONABLE PERSONS MAY DISAGREE ON THE CHARACTER OF THE DRIVER'S CONDUCT AND ON THE EXTENT OF THE HUSBAND'S DISTRESS. THEREFORE, THESE ISSUES MUST BE SUBMITTED TO THE JURY.

The husband asserts that the facts here are so egregious that the issue of intentional infliction of emotional distress, also known as the tort of outrage, should be submitted to a jury.[22] The driver and Hartford argue that Page's negligent conduct is insufficient to support submitting the issue to the jury. Unlike the negligent infliction of emotional distress, intentional infliction of emotional distress is an independent tort.[23] Damages for the intentional infliction of emotional distress or the tort of outrage, may be awarded for bodily injury when "one who by

extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." [24]

In *Breeden v. League Serv. Corp.*, 575 P.2d 1374, 1377 (Okla.1978), we established the role of the trial court and the jury in tort actions involving emotional distress. We said:

"The court, in the first instance, must determine whether the defendant's conduct **may** reasonably be regarded **so extreme and outrageous** as to permit recovery or whether it is necessarily so. Where, under the facts before the court, reasonable persons may differ, it is for the jury, subject to the control of the court, to determine whether the conduct in any given case has been significantly extreme and outrageous to result in liability. Likewise, it is for the court to determine, in the first instance, whether based upon the evidence presented, **severe emotional distress** can be found. It is for the jury to determine whether, on the evidence, severe emotional distress in fact existed." (Emphasis in original. Footnotes omitted.)

In response to a motion for partial summary judgment, the trial court determined that no cause of action existed on the issue of intentional infliction of emotional distress. Because the motion was sustained on the finding that no cause of action existed, the facts of the case were not weighed to decide whether a jury might find the driver's conduct "outrageous." [25] The trial judge did

---

19. *Eyrich v. Dam*, see note 17, 473 A.2d at 544, supra.

20. *Ball v. Prentice*, 162 Ariz. 150, 781 P.2d 628, 630 (1989); *Eyrich v. Dam*, see note 17, 473 A.2d at 544, supra.

21. *Pieters v. B–Right Trucking, Inc.*, see note 3, supra; *State of Maryland v. Bungie*, see note 3, supra; *Burgess v. Superior Court*, see note 3, 9 Cal.Rptr.2d at 619–20, 831 P.2d at 1201–03, supra; *Keck v. Jackson*, see note 3, supra; *Bovsun v. Sanperi*, see note 3, supra. See also, *Buck v. Greyhound Lines, Inc.*, note 3, supra.

22. Intentional infliction of emotional distress or the tort of outrage is governed by the narrow standards of the Restatement (Second) of Torts § 46 (1977). *Hadnot v. Shaw*, see note 4 at 985, supra; *Breeden v. League Serv. Corp.*, see note 4, supra; *Williams v. Lee Way Motor Freight, Inc.*,

688 P.2d 1294, 1298 (Okla.1984). Section 46 provides in pertinent part:

"(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm...."

23. *Breeden v. League Services Corp.*, see note 4, supra.

24. *Breeden v. League Services Corp.*, see note 4, supra; Restatement of Torts (Second) § 46 (1965).

25. Restatement (Second) of Torts § 46, comment d (1977) provides in pertinent part:

"... Liability has been found only where the conduct has been so outrageous in character,

not find that the husband had not suffered severe emotional distress. Rather, he granted partial summary judgment on the assumption that because the husband was a bystander, no cause of action existed for his injuries.

Even when basic facts are undisputed, motions for summary judgment should be denied, if under the evidence, reasonable persons might reach different inferences or conclusions from the undisputed facts. Summary judgment should be granted only when the pleadings, affidavits, depositions, admissions or other evidentiary materials establish that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.[26]

We are convinced that the driver's actions at the time of the accident may be sufficient to cause reasonable persons in the community to find his conduct so extreme and outrageous that recovery should be allowed.[27] The husband presented evidentiary materials to support a finding that he has indeed suffered severe emotional distress arising from seeing his wife's suffering.[28] We find that because, under the facts, reasonable persons may disagree on the character of the driver's conduct and on the extent of the husband's

and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' . . . ."

**26.** *Carris v. John R. Thomas & Ass.*, 896 P.2d 522, 530 (Okla.1995); *Roach v. Atlas Life Ins. Co.*, 769 P.2d 158, 163 (Okla.1989).

**27.** *Chandler v. Denton*, 741 P.2d 855, 867 (Okla. 1987); Restatement (Second) of Torts § 46, see note 25, supra.

**28.** The husband submitted an affidavit to the trial court providing in pertinent part:

" . . . 4. As a result of this incident and as a result of witnessing the injuries to my wife, I have suffered extreme emotional distress, lost weight, have experienced decreased energy levels, suffered sleeplessness, shed tears, altered my diet due to changes in my digestive system, experienced nausea, seem to be more susceptible to illness, and have experienced increases in stomach gases, which have distended my stomach.
5. As a result of this incident and as a result of witnessing the injuries to my wife, I have suffered psychological manifestations which have affected me physically. I have received treatment from Dr. Robert M. Wienecke for post-traumatic stress disorder. I saw him once to twice a month through December 1992, at a total cost of approximately $1,455.00. I also saw Thurman E. Coburn, Ph.D., twice at a cost of $200.00 . . . ."
Notes from the husband's psychiatrist provide in pertinent part:
1/27/92 "Terribly grieved and probably major depressed. . . . His wife was killed in a parking lot by a drunk driver and dragged, before his eyes. . . . He also has, and I didn't formally make this diagnosis, a Post Traumatic Stress Syndrome . . . ."

3/3/92 " . . . (T)alked about his falling asleep and waking up with the visions of the tragedy in his head. . . ."
12/9/92 "Tried to help him understand and develop devices to cope with the intrusive thoughts that come into his mind about him being under the wheels of the truck that killed his wife . . . ."
The affidavit of Robert M. Wienecke, M.D., F.A.P.A., provides in pertinent part:
" . . . 4. Witnessing the death of his wife in this manner was an intense personal tragedy for Mr. Kraszewski, probably the worst personal tragedy I have seen in approximately 40 years of practice. As a direct result of witnessing the death of his wife in this incident, Mr. Kraszewski suffers with post-traumatic stress disorder. After a year of treatment, Mr. Kraszewski still has major symptoms, and in all probability due to his age he will never recover. The condition is permanent. . . ."
*Pieters v. B–Right Trucking, Inc.*, see note 3, supra; *State of Maryland v. Bungie*, see note 3, supra; *Burgess v. Superior Court*, see note 3, 9 Cal.Rptr.2d at 619–20, 831 P.2d at 1201–03, supra; *Binns v. Fredendall*, see note 2, supra; *Keck v. Jackson*, see note 3, supra; *Bovsun v. Sanperi*, see note 3, supra; *Eyrich v. Dam*, see note 17, supra; Annot., "Right to Recover Damages in Negligence for Fear of Injury to Another, or Shock or Mental Anguish at Witnessing Such Injury," see note 17, supra. See also, *Buck v. Greyhound Lines, Inc.*, note 3, supra.
The Court of Appeals found that there was no intentional infliction of emotional distress because, in its words, "(i)t is evident that the acts of Page were not intentional." Section 46 of the Restatement speaks both of reckless and intentional conduct in relation to intentional infliction of emotional distress. However, we need not determine whether the analysis used by the appellate court is correct because there is evidence in the transcript to support a finding that Page may have acted intentionally in either hitting Mrs. Kraszewski or in refusing to stop until he pulled behind other vehicles that made his escape impossible. See the transcript of proceedings, note 5, supra.

distress, these issues must be submitted for jury determination.

## CONCLUSION

Damages for mental anguish caused by witnessing the suffering of a third party may be compensable where the plaintiff also suffers physical injuries in the same accident which caused the third party's injuries. To support a cause of action for intentional infliction of emotional distress, it must be established that: 1) the plaintiff was directly physically involved in the incident; 2) the plaintiff was damaged from actually viewing the injury to another rather than from learning of the accident later; and 3) a familial or other close personal relationship existed between the plaintiff and the party whose injury gave rise to the plaintiff's mental anguish.[29] Under *Breeden v. League Serv. Corp.*, 575 P.2d 1374, 1377 (Okla.1978), the trial court must determine whether the defendant's conduct may reasonably be regarded as sufficiently extreme and outrageous to support a cause of action for intentional infliction of emotional distress. If the trial judge determines that reasonable persons could differ in an assessment of this critical issue, the tort of outrage must be submitted to the jury.[30] Because partial summary judgment was granted on grounds that the husband failed to state a cause of action, the trial court did not make the findings required by *Breeden.* We find that the facts justify a jury determination of the character of the

driver's conduct and of the extent of the husband's distress.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS OPINION VACATED; REVERSED AND REMANDED.**

ALMA WILSON, C.J., KAUGER, V.C.J. and HODGES, SUMMERS and WATT, JJ., concur.

LAVENDER, SIMMS, HARGRAVE and OPALA, JJ., dissent.

OPALA, Justice, dissenting.

When one dies as a result of an actionable injury, the law affords *but two* remedies for *post mortem* recovery: (1) a common-law tort claim that *survives* by force of statute, 12 O.S.1991 § 1051,[1] and (2) a *constitutionally protected* wrongful-death action *created* by the legislature, 12 O.S.1991 §§ 1053–1055 [2]. Today's opinion *adds a third* remedy: a surviving spouse's claim for bystander harm occasioned by the actor's intentional infliction.

The *two* existing remedies have completely occupied the entire field of *post mortem recovery.* They leave no room for *any* common-law development that tinkers with the delicate balance struck by the combined components of our legislative and fundamental-law provisions, which have *stood together intact* since statehood.

Because I view the presently effective compensatory regime for *post mortem* recovery as beyond the judiciary's power either *to*

---

**29.** *Pieters v. B–Right Trucking, Inc.,* see note 3, supra; *State of Maryland v. Bungie,* see note 3, supra; *Burgess v. Superior Court,* see note 3, 9 Cal.Rptr.2d at 619–20, 831 P.2d at 1201–03, supra; *Keck v. Jackson,* see note 3, supra; *Bovsun v. Sanperi,* see note 3, supra. See also, *Buck v. Greyhound Lines, Inc.,* note 3, supra.

**30.** *Eddy v. Brown,* 715 P.2d 74, 76–77 (Okla. 1986).

**1.** The provisions of 12 O.S.1991 § 1051 are:

"In addition to the causes of action which survive at common law, causes of action for mesne profits, or *for an injury to the person,* or

to real or personal estate, or for any deceit or fraud, shall also survive; and the action may be brought, notwithstanding the death of the person entitled or liable to the same." (Emphasis supplied.)

**2.** The wrongful-death legislation is protected by Art. 23 § 7, Okl. Const. (1985), which provides in pertinent part:

"The *right of action* to recover damages for injuries resulting in death *shall never be abrogated,* and the amount recoverable shall not be subject to any statutory limitation" .... (Emphasis supplied.)

*restrict or to expand,*[3] I recede from the court's holding and from its pronouncement.

**3.** *See in this connection F.W. Woolworth Co. v. Todd,* 204 Okl. 532, 231 P.2d 681, 684 (1951); *Roberts v. Merrill,* Okl., 386 P.2d 780, 783 (1963).